Cooke, J.
 

 Arnold Schwartz, a resident of Salem, Massachusetts, responded to an advertisement placed by plaintiff, a New York corporation, in the
 
 Boston Globe.
 
 At the request and expense of plaintiff, Schwartz traveled to plaintiff’s corporate offices at 328 Central Avenue, Albany, New York, and was there interviewed by George Reiner, plaintiff’s president. The position Schwartz sought was that of salesman, the territory was that of New England.. An agreement was reached that day and, when Schwartz returned to Massachusetts, he took with him a memorandum thereof, which included notations as to his sales territory, his rate of commissions, and other incidentals of his employment. The employment relationship, entered into on December 23, 1967, apparently continued for over four years, during which time Schwartz covered the New England area, an area not including New York, using his Massachusetts home as hi§ office.
 

 Sometime after termination of the employment relationship, plaintiff brought an action against Schwartz, alleging that the latter "knowingly, willfully and fraudulently violated the terms of the contract”. Recovery was sought in the amount of $13,553.35, which amount was alleged to represent the excess of drawings over commissions retained by Schwartz in violation of the terms of the agreement. Schwartz moved to dismiss the action on the grounds that the court lacked personal, as well as subject matter, jurisdiction. Special Term granted the motion, crediting defendant’s claim of lack of personal jurisdiction. By a divided court, the Appellate Division reversed, reinstating the complaint. The following question was certified for our review: "Did Special Term err as a matter of law in granting defendant’s motion to dismiss the cause of action set forth in the complaint on the ground that the court lacked jurisdiction of the person of the defendant?”
 

 When tracing the modern notion of due process as it relates to in personam jurisdiction, it is necessary to go back no further than
 
 International Shoe Co. v Washington
 
 (326 US 310). There the Supreme Court cast aside the narrow and
 
 *650
 
 rigid view taken in
 
 Pennoyer v Neff
 
 (95 US 714, 733) that due process required a defendant’s physical presence in the territorial jurisdiction of the court for that court’s judgment to be binding upon him. "Due process”, the court in
 
 International Shoe
 
 wrote, "requires only that in order to subject a defendant to a judgment
 
 in personam,
 
 if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice’ ” (326 US, at p 316). Although the court’s analysis and discussion which followed focused on the sometimes difficult task of identifying corporate activities sufficient to constitute "presence”, the court recognized that there are certain acts which because of their "nature and quality and the circumstances of their commission” may be "deemed sufficient” to render a defendant, not physically present, liable to suit (326 US, at p 318). Thus, the Supreme Court explained that there is no simple mechanical or quantitative test to be applied, due process in each case depending upon "the quality and nature of the activity in relation to the fair and orderly administration of the laws” (326 US, at p 319).
 

 McGee v International Life Ins. Co.
 
 (355 US 220) exemplified the application of a type of qualitative test, in personam jurisdiction based and upheld solely upon a contract, a reinsurance agreement, made between a California resident and a nonresident defendant insurance company. While in
 
 McGee
 
 there was but a single contact, the court gave special weight to the nature of such contact insofar as it credited California’s special interest in providing effective redress for its residents when nonresident insurers refused to pay claims on insurance solicited within its borders. In
 
 Hanson v Denckla
 
 (357 US 235), a case decided soon after
 
 McGee,
 
 the Supreme Court stressed the qualitative aspect of the contact in
 
 McGee
 
 in order to show that the " 'minimal contacts’ ” requirement had been satisfied there (357 US, at pp 251-252). The court pointed out that, as the unilateral activity of those claiming relationship with nonresident defendants could not satisfy the requirement of contact with the forum State (357 US, at p 253), the Florida court in
 
 Hanson v Denckla
 
 had no jurisdiction over the Delaware trustee, the latter neither having an office nor transacting any business in Florida. The court continued, explaining that while the application of the "minimal contacts” rule will vary with the quality and the nature of the
 
 *651
 
 defendant’s activity,
 
 "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State,
 
 thus invoking the benefits and protection of its laws” (357 US, at p 253; emphasis supplied).
 

 The Supreme Court’s recognition of the scope of a State’s power exercisable within the newly defined limits of due process was a recognition that in personam jurisdiction could be had over a nonresident defendant on but a single act, but only if such act was of a particular quality or nature. In 1962, aware of this new due process standard, the New York Legislature enacted CPLR 302 (subd [a]) of which in pertinent part provides that personal jurisdiction may be asserted over a nondomiciliary "who in person or through an agent * * * 1. transacts any business within the state” so long as the cause of action arises out of such transaction. The first major New York decision in the area and the one most often looked to for guidance as to the breadth of this portion of the statute is
 
 Longines-Wittnauer Watch Co. v Barnes & Reinecke
 
 (15 NY2d 443). In
 
 Longines,
 
 our court, after reviewing defendant’s numerous New York activities, declined to determine the sufficiency of any one, instead holding that in combination they more than met the statutory, as well as the constitutional, standard. Such declination was not meant to indicate that a single transaction in New York out of which a cause of action arose would not be sufficient to satisfy the statutory transaction of business requirement. To the contrary, the court asserted that even appellant Barnes & Reinecke did not dispute that a single transaction might suffice. Barnes & Reinecke’s argument was, rather, that neither preliminary nor subsequent New York activities could be regarded as amounting to the transaction of business if the underlying contract was not made in New York. This argument was, of course, rejected and the court counted and weighed the lesser activities to determine their sufficiency. For its holding, as already noted, the court relied upon the quantity and compos-, ite quality of the various related activities, choosing not to rely upon the quality of any particular one.
 

 In
 
 Parke-Bernet Galleries v Franklyn
 
 (26 NY2d 13) the court again indicated that proof of a single transaction in New York would satisfy the statutory requirement, citing
 
 Longines,
 
 as well as several noted commentators (McLaughlin, Supplementary Practice Commentary to CPLR 302, McKinney’s Cons
 
 *652
 
 Laws of NY, Book 7B [1969 Cum Supp], pp 129-130; 1 Weinstein-Korn-Miller, NY Civ Prac, par 302.06) and quoted Dean McLaughlin’s characterization of CPLR 302 as " 'a single-act statute requiring, but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York’ ” (26 NY2d, at p 17). Although not physically present, defendant Dr. Franklyn had actively participated in a New York auction by means of an open telephone line, his bids being relayed to the auctioneer who announced them to the other bidders in the auction room. One of the two alternative grounds for the holding was that Dr. Franklyn had personally engaged in purposeful activity here. In the opinion, the court characterized the situation where a defendant was physically present at the time the contract was made as "the clearest sort of case in which our courts would have 302 jurisdiction” (26 NY2d, at p 17). Had the doctor been physically in the auction room when he made his bids there would have been no question that his presence coupled with his participation would have been sufficient purposeful New York activity to have conferred jurisdiction. Viewing Dr. Franklyn’s direct and personal involvement in the auction, albeit by open telephone line, as "presence”, the court found that such "presence”, in combination with active participation in the bidding, amounted to the sustained and substantial transaction of business here.
 

 More recently, in
 
 Hi Fashion Wigs v Hammond Adv.
 
 (32 NY2d 583), this court acknowledged jurisdiction over third-party defendant Schuminsky who had traveled from Oklahoma to New York to deliver his personal guarantee on a contract. The court found the delivery of the guarantee to be essential to the existence of the contract, reasoning that such delivery constituted acceptance of the offer. Not only did the contract of guarantee come into being upon delivery but, by making such delivery in New York, Schuminsky was "deemed to have 'purposefully’ availed himself 'of the privilege of conducting activities within [this] State,’ thereby 'invoking the benefits and protections of its laws’
 
 (Hanson v. Denckla,
 
 357 U. S. 235, 253)” (32 NY2d, at p 587). The court identified the situation in
 
 Hi Fashion Wigs
 
 as being an example of the " 'clearest sort of case in which our courts would have 302 jurisdiction’ ” (p 586) since defendant had been physically present at the time the contract was made. Although the court found a contract made in New York on which to bottom the holding, it acknowledged that the same result could have
 
 *653
 
 been reached absent a New York contract, by " 'looking at the transaction as a whole’ ” (32 NY2d, at p 587) and, in effect, making an analysis of Schuminsky’s activities similar to that made of the defendant’s activities in
 
 Longines.
 

 The instant case can be analyzed in the manner of the afore-mentioned New York cases (see, also,
 
 Iroquois Gas Corp. v Collins,
 
 42 Misc 2d 632, 634-635 [Jasen, J.], affd 23 AD2d 823) as here we have the "clearest sort of case” in which our courts would have 302 jurisdiction. Here, Schwartz was physically present in New York at the time the contract, establishing a continuing relationship between the parties, was negotiated and made and, the contract, made in New York, was the transaction out of which the cause of action arose. Additionally we note that by such holding we have not overstepped constitutional bounds, for the acts upon which we rely, the defendant’s coming into New York purposefully seeking employment, his interview and his entering into an agreement with a New York employer which contemplated and resulted in a continuing relationship between them, certainly are of the nature and quality to be deemed sufficient to render him liable to suit here. There can be no question that, by his acts, defendant has purposefully availed himself of the privilege of conducting activities, in our jurisdiction, thus invoking the benefits and protection of our laws
 
 (Hanson v Denckla,
 
 357 US, at p 253). Here, the activities of Schwartz cannot be reasonably viewed as merely the " 'last act marking the formal execution of the contract’ (cf.
 
 Longines-Wittnauer v. Barnes & Reinecke,
 
 15 NY 2d 443, 457,
 
 supra)
 
 which might not, without more, suffice to subject [defendant] to this State’s jurisdiction”
 
 (Hi Fashion Wigs v Hammond Adv.,
 
 32 NY2d 583, 586,
 
 supra).
 
 Rather, we have before us, as has been noted, a day which included interviewing, negotiating and contracting—the purposeful creation of a continuing relationship with a New York corporation. Considering the parties involved and the type of contract appropriate, no longer or more extensive negotiations or more detailed agreement would have been necessary to establish an employer-employee relationship such as that established here (cf.
 
 Harry Winston, Inc. v Waldfogel,
 
 292 F Supp 473, 481).
 

 Although defendant cites
 
 McKee Elec. Co. v Rauland-Borg Corp.
 
 (20 NY2d 377) in support of his position, that case is distinguishable. While here we can rely upon a single but complete transaction of business in the forum, there the
 
 *654
 
 majority, giving no weight to the original one-year contract (made, possibly in New York, but seven years previous), employed the same type of analysis as was used in
 
 Longines.
 
 While in
 
 Longines
 
 the cumulative weight of the activities was deemed sufficient, in
 
 McKee,
 
 even cumulatively, the contacts were characterized as "infinitesimal” and thus judged insufficient to sustain jurisdiction. Likewise, the
 
 McKee
 
 majority found that jurisdiction could not be sustained under the
 
 Hanson v Denckla
 
 criteria (20 NY2d, at pp 381-382). Comparing the one-day visit into New York of defendant’s representative in
 
 McKee
 
 with the equally brief New York visit of defendant Schwartz, we note that it is the nature and quality of the visits that so clearly set them apart, permitting one to serve as the basis for jurisdiction, and the other not. In the case before us we have purposeful activity in New York directed toward and resulting in the establishment of a contractual relationship while in
 
 McKee
 
 there was merely a casual attempt by defendant’s representative to look into or smooth out difficulties between plaintiff and plaintiff’s customers. The
 
 McKee
 
 court expressed valid concern that, were the visit there to serve as a sufficient basis for jurisdiction, then "every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York [would run] the risk of being subjected to the personal jurisdiction of our courts” (20 NY2d, at p 382).
 

 While not in any way controlling, mention should be made of the many Federal decisions cited by the parties. Federal courts are in the unenviable position of being required to decide questions of 302 in personam jurisdiction as the New York courts would decide such questions, but often without benefit of State precedent. While some cases appear in consonance with our holdings (see, e.g.,
 
 American Eutectic Welding Alloys Sales Co. v Dytron Alloys Corp.,
 
 439 F2d 428;
 
 Liquid Carriers Corp. v American Mar. Corp.,
 
 375 F2d 951;
 
 Harry Winston, Inc. v Waldfogel,
 
 292 F Supp 473,
 
 supra),
 
 others do not (see, e.g.,
 
 Aurea Jewelry Creations v Lissona,
 
 344 F Supp 179).
 

 The order of the Appellate Division should be affirmed, with costs, and the question certified answered in the affirmative.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 Order affirmed, etc.