**TRANSATLANTIC CEMENT, INC., Plaintiff,**

v.

**LAMBERT FRERES et CIE, Claude Lambert, Robert Boublil, Claude DeMougin, Jacques Hoffmeyer, Defendants.**

**No. 76 Civ. 4114 (LFM).**

United States District Court, S. D. New York.

April 19, 1978.

Curtis, Mallet-Prevost, Colt & Mosle by John E. Sprizzo and Caren S. Brutten, New York City, for defendants.

Arthur N. Abbey by Stephen T. Rodd, New York City, for plaintiff.

## OPINION

MacMAHON, District Judge.

Defendants move to dismiss the complaint for lack of jurisdiction over the person, Rule 12(b)(2), Fed.R.Civ.P., or for improper venue. Rule 12(b)(3), Fed.R.Civ.P.

This is a diversity action for breach of contract and for "tortious interference with contractual relations." Plaintiff Transatlantic Cement, Inc. is a Louisiana corporation with its principal place of business in New Orleans. Defendant Lambert Freres et Cie ("LFC") is a French corporation with its principal place of business in France. The individual defendants are citizens of France and Switzerland.

In 1973, Hugh H. Aiken, an officer of plaintiff, prepared a study analyzing the American cement industry and concluding that the Marquette Cement Manufacturing Company ("Marquette"), a Tennessee-based cement producer, would be an attractive investment. Aiken travelled to Paris and presented the study to defendant Claude Lambert, vice-president of LFC, suggesting a joint venture with plaintiff to acquire Marquette. No agreement was reached concerning the proposed joint venture, but allegedly Lambert agreed that LFC would not independently seek to enter the American cement industry without compensating plaintiff for the use of its study.

Still attempting to reach agreement on a proposed joint venture, Aiken met in New York City on February 13, 1974 with the defendants Robert Boublil, Claude DeMougin and Jacques Hoffmeyer, who, as representatives of LFC, offered plaintiff $200,000 for all rights to the study. This offer was refused, apparently because Aiken and plaintiff desired to retain a percentage of any venture which would seek to acquire Marquette. Soon after this meeting, communications between plaintiff and LFC substantially ceased.

Between December 1974 and June 1975, representatives of LFC met with representatives of Marquette and the Southdown Corp. ("Southdown"), another cement firm, in an attempt to negotiate the purchase of Marquette or Southdown or both. During this period, some "five or six" meetings were held in New York City with Claude Lambert present at some, and attorneys and business "consultants" for LFC present at the others. Marquette and Southdown were represented at the meetings by their respective presidents. The substance of the discussions at these meetings is not detailed

in the papers before us, but it seems clear that discussions consisted of negotiations to purchase Marquette or Southdown or both. LFC never purchased either of these companies. Plaintiff claims, nevertheless, that in attempting to acquire them, LFC used the information contained in his study but failed to compensate him.

■ The in personam jurisdiction of a federal court sitting in diversity is determined in accordance with state law. *Arrowsmith v. United Press International,* 320 F.2d 219 (2d Cir. 1963) (en banc). New York CPLR § 302(a) provides, in pertinent part:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state . . . ."

■ Plaintiff contends that the February 13, 1974 meeting between plaintiff, Boublil, DeMougin and Hoffmeyer constitutes the transaction of business by LFC and the latter three individual defendants. We shall assume that it does. Nevertheless, we lack personal jurisdiction over Boublil, De-Mougin and Hoffmeyer because plaintiff's causes of action do not arise out of the business transacted at that meeting. See CPLR § 302(a) (introductory clause). Cf. *Fontanetta v. American Board of Internal Medicine,* 421 F.2d 355, 357–59 (2d Cir. 1970). Certainly, a claim for breach of contract or for tortious interference with contractual relations cannot be said to arise out of a meeting at which an offer was made

and rejected. Those activities by the parties neither broke nor interfered with any agreement, including any pre-existing agreement that LFC would refrain from entering the industry without compensating plaintiff. Since the February 13 meeting is the only nexus between Boublil, DeMougin, Hoffmeyer and the State of New York, we lack personal jurisdiction over those defendants.[1]

■ Defendants Claude Lambert and LFC, however, stand on very different footing. There can be little doubt that their New York City negotiations to purchase Marquette and Southdown constitute the transaction of business. Over a period of some six months, Lambert and other representatives of LFC[2] met in New York to negotiate such a purchase with high-level personnel of Marquette and Southdown. These were purposeful acts performed in this state for defendants' financial benefit. Although these activities might well have taken place elsewhere, LFC chose instead to enter the state and conduct its business here. Given this deliberate entry into the state for business purposes, we must conclude that the defendants availed themselves of "the privilege of conducting activities in [New York], thus invoking the benefit and protection of [New York's] laws," and subjecting it to our jurisdiction. *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 653, 394 N.Y.S.2d 844, 847, 363 N.E.2d 551, 554 (1977); *Med-Span Shipping Services, Ltd. v. Jerry Jones Mack, Inc.,* 442 F.Supp. 904, 905–06 (S.D.N.Y.1978). Cf. *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 955–56 (2d Cir. 1967) ("substantial preliminary negotiations [by]

---

1. The evidence does not support plaintiff's further contention that Boublil, DeMougin and Hoffmeyer made a subsidiary agreement at the February 13 meeting under which LFC promised not to enter the industry without compensating plaintiff for its study. By Aiken's own admission, such an agreement was reached, if at all, at the initial meeting between Aiken and Lambert in Paris. Thus, we cannot conclude that Boublil, DeMougin and Hoffmeyer executed a contract within the state. See *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977).

2. LFC's acts within the state were, of course, committed by the corporation's agents. It is not disputed that Lambert and the business "consultants" who represented LFC at the New York City negotiations were LFC's "agent[s]" within the meaning of CPLR § 302(a). See *Med-Span Shipping Services, Ltd. v. Jerry Jones Mack, Inc.,* 442 F.Supp. 904, 905–06 & n. 1 (S.D.N.Y.1978).

. . . high-level personnel" sufficient for jurisdiction). Since plaintiff claims that the mere negotiations constituted a breach of, and an interference with, a contract, the New York City negotiations give rise to the causes of action alleged. We therefore have jurisdiction over LFC and Lambert under CPLR § 302(a)(1).

█ Defendants further suggest that venue is improper in this district. These objections, however, are not well taken. Since the defendants are aliens, they may be sued in any district. See 28 U.S.C. § 1391(d).

Accordingly, the motion to dismiss for lack of jurisdiction over the person is granted as to defendants Boublil, DeMougin and Hoffmeyer. As to defendants Lambert and LFC, however, the motion to dismiss for lack of jurisdiction over the person, or for improper venue, is denied.

So ordered.