See also, D.C., 82 F.R.D. 652, and D.C., 82 F.R.D. 655.

### In re AMPICILLIN ANTITRUST LITIGATION.

**M.D.L. No. 50.  Misc. No. 45–70.**

United States District Court, District of Columbia.

May 21, 1979.

---

**648**

David I. Shapiro, James van R. Springer, Washington, D.C., for City, County and State plaintiffs.

Thomas H. Liddle, III, Antitrust Division, U.S. Dept. of Justice, Washington, D.C., for plaintiff, the United States.

Arnold Bauman, Robert F. Dobbin, New York City, for defendants, Beecham Group Limited and Beecham, Inc.

Jerome G. Shapiro, Alan H. McLean, New York City, Philip A. Lacovara, Washington, D.C., for defendant, Bristol-Myers Co.

### ORDER

CHARLES R. RICHEY, District Judge.

The Court now has before it the motion of defendant Bristo-Myers Company ("Bristol") to amend its answers in these consolidated actions. Bristol seeks leave to plead an additional affirmative defense as to the effect of any settlement payments by its co-defendants Beecham Group Limited and Beecham, Inc., on any liability which may later be assessed against Bristol. It also seeks to assert three cross-claims against the Beecham defendants: (1) against Beecham Group for indemnification, (2) against Beecham Group for damages and unjust enrichment, and (3) against both Beecham defendants for contribution. Rule 15(a) of the Federal Rules of Civil Procedure permits amendments of pleadings after the expiration date for amendment as of right, only with leave to court or by the consent of the adverse party. The Rule provides that leave to amend "shall be freely given when justice so requires." The Court has determined that, in all the circumstances of this case, it would be contrary to the interests of justice to grant the requested leave to amend.

This litigation commenced on March 19, 1970. The plaintiffs alleged violations of Sections 1 and 2 of the Sherman Act, charging that Bristol and Beecham conspired to monopolize and restrict trade in ampicillin and other semisynthetic penicillins, and fraudulently procured the ampicillin patent in order to do so. The plaintiffs seek to impose joint and several liability for these alleged violations. Bristol's motion for leave to amend its answers was filed on December 7, 1978, almost nine years after the original complaint was filed. The Court will first consider the portion of the motion concerning cross-claims against Beecham, and will separately address the proposed new affirmative defense.

Until the present motion, neither defendant has asserted cross-claims. Beecham and Bristol have prepared their defense of the case jointly and, until recently, engaged only in joint negotiations toward a global settlement. In September 1978, the Court approved a settlement between Beecham and Bristol and a plaintiff class composed of wholesale and retail druggists and private hospitals (WRPH class). In November 1978, attorneys for the United States Department of Justice and the city, county, and state plaintiff classes (CCS plaintiffs), sought and received this Court's preliminary approval for separate settlements with the Beecham defendants. These settlements are currently before the Court for its final approval.

The Court's approval of the Beecham settlements would result in the dismissal of the Beecham defendants from the major portions of this litigation.[1] The proposals provide for the cooperation of Beecham personnel, through their appearance at depositions and trial, for the continuing prosecution of the plaintiffs' case against Bristol. Bristol would be left to defend the case on

---

1. Beecham will remain a defendant in the *Zenith* and *Biocraft* cases, which are part of this consolidated litigation.

its own. Furthermore, were Beecham to be dismissed from these actions, Bristol might remain liable for the full amount of treble damages suffered by the plaintiffs, minus only that amount actually paid by Beecham in the settlement. Bristol maintains that Beecham's status as a foreign corporation will make it difficult or impossible to obtain personal jurisdiction over it at some later date for the purpose of asserting indemnification, contribution or breach of contract claims which may result from the plaintiffs' suit against Bristol.

Were the Court to allow Bristol to assert its proposed cross-claims, the effect would be to prevent Beecham's elimination as a defendant in this case. Beecham has stated that its motive in entering into the settlements is to end its participation in this litigation. This incentive would be destroyed if Bristol were permitted to assert its proposed cross-claims. With these cross-claims pending against it, Beecham would have reason to participate fully in the defense of the case, in order to reduce any primary liability to the plaintiffs. Under these circumstances, it would be less than equitable for the Court to require Beecham to carry out the terms of the settlements while remaining in the case by way of Bristol's newly asserted cross claims. Therefore, to grant the current motion to amend would cause Beecham and the plaintiffs to lose the benefit of their settlement bargain.

The Court should consider the timeliness of the motion and the practical effect of the proposed amendments on the parties in determining whether the amendment will serve the ends of justice. Wright and Miller state that:

. . . an amendment clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a result, the proposed amendment, if permitted, would have the effect of prejudicing another party to the action.

6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1488 at 438–9 (1970). In this case, the Court must consider the timeliness of the motion in balancing the benefit to Bristol of keeping Beecham in this case against the prejudice to the plaintiffs and the Beecham defendants of losing the benefits of their settlement.

Bristol cites the case of *Refrigeradora Del Noroeste S. A. v. Applebaum*, 248 F.2d 858 (1957), in support of the timeliness of its motion. There, the Seventh Circuit held that it was error to deny a defendant leave to amend his answer to assert an antitrust claim four days before trial in a breach of contract case. The Court took into account the fact that the plaintiff in that case was a foreign corporation, against whom service of process in a later suit might be difficult. The defendant based his motion on an affidavit stating that additional facts had been learned through discovery "within the past few weeks" which gave rise to the possibility of a counterclaim. Here, Bristol argues that such "new facts" inhere in the fact of Beecham's separate settlement. Bristol contends that the settlement proposal gave it new cause to doubt Bristol's "warranty and other assurances" which it claims were part of the 1959 Beecham and Bristol agreement out of which the conspiracy allegations in this case arose. This new suspicion is substantively related to the new breach of warranty claim which Bristol seeks to assert. In addition, Bristol contends that the separate settlement is sufficient to excuse its eight-year delay in attempting to assert these claims against its co-defendant.

Bristol's claim of surprise at Beecham's separate settlement seems, at best, disingenuous. Both defendants had been trying to settle the case for years prior to this settlement. It seems clear that the widely divergent estimated damages attributable to each defendant, combined with their joint and several liability under the antitrust laws, might have made a separate settlement seem desirable at any time. Apart from the Beecham settlement, no new facts have recently been unearthed which were not previously available to Bristol.

The claims for contribution and indemnification which Bristol now seeks to assert are logically unrelated to the settlement.

If these claims can be raised now, they could have been raised at any time since 1970. The mere fact that Beecham has recently entered into separate settlement agreements with the plaintiffs cannot be considered new evidence relevant to Beecham's conduct twenty years ago, nor can it be considered by the Court in an evaluation of Bristol's current reconsideration of its earlier choice to throw in its lot with Beecham in this litigation. For the Court to consider this fact would violate the policy in favor of antitrust settlements negotiated at arms' length. Bristol has indeed been lethargic if, during the nine years of its cooperation with Beecham in this litigation, it has failed to determine to its satisfaction Beecham's state of mind regarding their 1959 agreement, or to consider the consequences to it of a separate Beecham settlement.

It is appropriate for the Court to consider the merits of the proposed amendment in weighing its possible prejudicial effect on any parties. Especially where, as here, prejudice to some party is likely if the amendment is permitted, the Court need not allow the addition of claims which are unlikely to succeed on the merits. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), ("futility of amendment" listed as a ground for denial); *Franchise Realty Corp. v. San Francisco Local Joint Executive Board*, 542 F.2d 1076, 1085 (9th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). *Also see* 3 Moore's Federal Practice § 15.-08(4); 6 Wright & Miller, *supra* § 1487 at 432–33 (1970).

Almost without exception, the courts have held that contribution and indemnity are not available among alleged co-conspirators in actions under the antitrust laws. In *Sabre Shipping Corp. v. American President Lines, Ltd.*, 298 F.Supp. 1339 (S.D.N.Y. 1969), the Court refused to allow a non-settling defendant to assert a claim for contribution and indemnity against its settling co-defendant. Later cases have followed the *Sabre Shipping* holding. *See Olson Farms, Inc. v. Safeway Stores, Inc.*, 1977–2 Trade Cases ¶ 61,698 (D.Utah 1977). In *El Camino Glass v. Sunglo Glass*, 1977–1 Trade Cases ¶ 61,553, at 71,112 (N.D.Cal.1976), the Court dismissed a third-party complaint seeking contribution against an alleged co-conspirator. It expressly recognized that to allow such a claim would undermine the Congressional intent to deter antitrust violations through joint and several liability.

In the recent case of *Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.*, 594 F.2d 1179, 1979, the Eighth Circuit held that there was no absolute bar to pro rata contribution from one antitrust defendant to another. The Court made it clear that its holding was limited to certain circumstances in which contribution might further rather than hamper the deterrent purposes of the antitrust laws. In that case, the plaintiff did not object to the defendant's attempt to recover from its alleged co-conspirator. In fact, that appeared to be a case where a rule against contribution would enable a powerful tortfeasor to escape antitrust liability altogether by exercising "sufficient economic influence to prevent a plaintiff from including it as a defendant." At 1185. Recognizing the possible danger to good-faith settlement efforts which might be created by a rule permitting contribution, the Court expressly pointed out that it did *not* deal with "the problem of how to treat a joint tortfeasor who has settled in good faith." At 1184.

This is precisely the situation not addressed in *Professional Beauty Supply*. Beecham will not escape the consequences of its antitrust violation if these amendments are not permitted. Rather, it has negotiated in good faith a settlement which is beneficial to the plaintiffs as well as to itself. In contrast to the *Professional Beauty Supply* situation, the plaintiffs here join Beecham in opposing the proposed amendments, since their effect would be to destroy the Beecham settlement. Even after *Professional Beauty Supply*, the likelihood that Bristol will recover on any claims for contribution or indemnity against Beecham remains attenuated.

Bristol argues that neither the lateness of its motion nor the tenuousness of its new claims should bar the amendment, because this may be its last chance to sue Beecham in the United States. First, as to its cross-claim alleging breach of warranty and unjust enrichment, Bristol acknowledges that it may be able to obtain jurisdiction over Beecham in another action under 35 U.S.C. § 293, which provides jurisdiction over a foreign owner of a United States patent in actions affecting the patent or rights thereunder. This is, as was pointed out above, the only one of Bristol's new claims as to which the "new fact" of the Beecham settlement can be considered logically relevant.

There is no assurance that Bristol will be able to gain jurisdiction over Beecham for its contribution and indemnity claims at a later date, but it is likely that jurisdiction will be available on some basis. Since these claims are contingent on findings that Bristol is liable to the plaintiffs, there is no danger that they will be time-barred. *States Steamship Co. v. American Smelting & Refining Co.*, 339 F.2d 66, 70 (9th Cir. 1964), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1109, 14 L.Ed.2d 155 (1965). Jurisdiction to sue Beecham Group in New Jersey may be available through its wholly owned subsidiary, Beecham, Inc. This jurisdiction is not guaranteed, because it would require the piercing of the corporate veil. An additional basis of jurisdiction over Beecham Group may be available under New York's long-arm statute, N.Y.C.P.L.R. § 302. The 1959 contract between Beecham and Bristol was negotiated and executed in New York, and the New York courts' have construed that statute to extend to a foreign contracting party under such circumstances. *Geo. Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 847, 363 N.E.2d 551, 554 (1977). In sum, it appears most likely that jurisdiction over Beecham will be available in a later action for the contribution and indemnity claims.

Any prejudice to Bristol through the Court's denial of its current motion to assert cross-claims against Beecham is a matter of speculation, because success on these claims is at best unlikely, and because jurisdiction will probably be available against Beecham in another action. On the other hand, it is certain that the plaintiffs and Beecham would be harmed through the loss of their long-negotiated bargain. The result would be further delay and complication in this already lengthy and complex litigation. Bristol's motion to amend will therefore be denied insofar as it seeks to assert cross-claims against Beecham.

The loss of the Beecham settlement would not necessarily follow if the Court were to permit Bristol to assert its new affirmative defense as to the effect of the Beecham settlement on Bristol's liability to the plaintiffs. This new defense affects the settlement only insofar as it suggests a reduction in the plaintiffs' total final recovery. However, any reduction in Bristol's liability caused by Beecham's settlement payments may be made by the Court without any need for specific pleading by the remaining defendant. The amendment is therefore superfluous. To the extent that it suggests a more extensive reduction in Bristol's ultimate liability than the Court would otherwise allow, the defense would be misleading and confusing. Therefore, Bristol's motion to amend will also be denied insofar as it seeks to assert an additional affirmative defense.

It is, therefore, by the Court, this 21st day of May, 1979,

ORDERED, that the motion of defendant Bristol-Myers Company for leave to amend its answers herein shall be, and the same hereby is, denied, in all respects, as hereinabove set forth.