**NEW GENERATION FOODS, INC., Plaintiff,**

**v.**

**SPICER'S INTERNATIONAL, COMMON TRUST, John L. Harmer, and R. Howard Harmer, Defendants.**

**No. 86 Civ. 1378 (SWK).**

United States District Court, S.D. New York.

July 30, 1987.

Meltzer, Lippe & Goldstein, by Alan Mitzman, Mineola, N.Y., for plaintiff.

Stroock & Stroock & Lavan, by Brian Cogan, New York City, for defendants.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff, New Generation Foods ("NGF"), brings this action in federal court for the Southern District of New York, alleging that defendants, Spicer's International, Common Trust, John L. Harmer, and R. Howard Harmer, breached two out of five contracts executed by the parties. Plaintiff seeks from this Court both injunctive and monetary relief. Defendants move to dismiss plaintiff's complaint for lack of personal jurisdiction in this state or improper venue in this district, pursuant to Fed.R.Civ.P. 12(b)(2) and (3). In the alternative, defendants move to have this case

transferred to the District of Utah pursuant to 28 U.S.C. § 1404(a).

*Facts*

In July 1984, NGF's former officers, Jack Lindsey and Alan Kline, came to Salt Lake City, Utah, in order to negotiate a distributorship agreement with Spicer's International (Aff. of John L. Harmer, ¶ 6). This meeting resulted in a "Letter of Understanding," dated July 16, 1984, which was the first of five contracts between NGF and Spicer's. The Letter of Understanding concerned provisions of Spicer's distributorship of NGF products. The second contract, also dated July 16, 1984, was a "Distributor Agreement" between NGF and Spicer's (*Id.* at ¶ 7). The Distributor Agreement addressed Spicer's exclusive distributorship of NGF products within the defined territory of the states of Washington, Oregon, Utah, Idaho, New Mexico, Nevada, Arizona, Montana and Texas. The third contract, a "Financing Agreement" between NGF, Spicer's and "the Harmer Group" was dated July 17, 1984 (*Id.*). The Financing Agreement was executed in Salt Lake City and concerned NGF's cash advances to Spicer's in exchange for preferred stock (*Id.*).

Business proceeded between NGF and Spicer's for the following year under these three contracts (*Id.* at ¶ 10). In May 1985, Jerome Flum took over as chairman of the board of directors of NGF (*Id.* at ¶ 12). On May 21, 1985, Flum requested that J. Harmer come to New York in order to restructure the relationship between NGF and Spicer's. On May 22, 1985, J. Harmer and R. Harmer visited Mineola, New York, where they negotiated and executed the fourth and fifth contracts, which are the subject of this dispute (*Id.* at ¶ 13).

The fourth contract, the "Termination Agreement" allegedly terminated the three existing contracts and restructured the NGF–Spicer's relationship (*Id.* at ¶ 12). The fifth contract, the "Diet Center Agreement," provided for Spicer's distribution of NGF products.

In February 1986, plaintiff commenced litigation against defendants in the Southern District of New York. Plaintiff alleges that defendants breached the Termination Agreement by failing, among other things, to account for its inventory of NGF product and to obtain the agreement of the members of Common Trust other than J. Harmer and R. Harmer to the restrictive covenants in the Termination Agreement. Plaintiff's Complaint at ¶ 23. Plaintiff also alleges that the Diet Center Agreement terminated upon material breach of the Termination Agreement.

*Personal Jurisdiction in New York*

To determine whether a foreign corporation is amenable to a suit in federal district court, the court must apply the standards for personal jurisdiction for the state in which it sits. *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir. 1963). Therefore, it is necessary to determine whether "long-arm" jurisdiction can be asserted in this case under § 302 of the New York Civil Practice Law and Rules ("CPLR"). CPLR § 302(a)(1) states that a court may exercise personal jurisdiction over any non-domiciliary who: "transacts any business within the state or contracts anywhere to supply goods or services in the state."

■ New York courts have held that "where a contract is made in this state and a cause of action arises out of such contract, the consummation of the contract in New York constitutes the transaction of business or minimum contacts necessary to invoke personal jurisdiction." *Iroquois Gas Corp. v. Collins,* 42 Misc.2d 632, 634–635, 248 N.Y.S.2d 494, 497 (Sup.Ct.1964), *aff'd,* 23 A.D.2d 823, 258 N.Y.S.2d 376 (4th Dept.1965). *See also Patrick Ellam, Inc. v. Nieves,* 41 Misc.2d 186, 245 N.Y.S.2d 545 (Sup.Ct.1963) (making of contract in New York is a sufficient transaction to bring defendant within scope of § 302(a)). Likewise, in federal court, personal jurisdiction was upheld where defendant, an out of state corporation with no officers, employees, telephone listings, or bank accounts in New York, negotiated and executed a contract in New York. *Security National Bank v. Republic National Life Insurance,* 364 F.Supp. 585, 589 (S.D.N.Y.1973).

Personal jurisdiction, furthermore, is not defeated because defendants were only in New York for one day in order to sign their contracts. The New York Court of Appeals has held that even a single transaction of business in New York, out of which the cause of action has arisen, may be sufficient for the assertion of long arm jurisdiction under CPLR § 302(a)(1). *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 456, 209 N.E.2d 68, 75, 261 N.Y.S.2d 8, 18, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). In *George Reiner and Co. v. Schwartz*, 41 N.Y.2d 648, 363 N.E.2d 551, 394 N.Y.S.2d 844 (1977), the Court of Appeals held that New York's long arm statute conferred personal jurisdiction on defendant even when defendant only met with plaintiff in New York on one occasion. The court found that "here we have the clearest sort of case in which our courts would have § 302 jurisdiction. Here, [defendant] was physically present in New York at the time the contract ... was negotiated and made and, the contract, made in New York, was the transaction out of which the cause of action arose." *Id.* at 653, 363 N.E.2d at 554, 394 N.Y.S.2d at 847.

Defendants claim that personal jurisdiction is defeated because they were "forced" to sign their contracts in New York by what they term "an overbearing business partner with virtual control over their economic survival." Defendants' Memorandum of Law at 19. However, in their affidavits, defendants stated that "[o]n May 21, 1985, Mr. Flum demanded that if we were to have a new agreement, we had to immediately fly to New York and execute a replacement agreement. We *agreed* to go to New York immediately...." (Aff. of John L. Harmer at ¶ 13). From defendants' own affidavit it appears that defendants voluntarily went to New York in order to appease plaintiff's chairman of the Board. Therefore, because defendants came to New York in order to negotiate and sign two written contracts, personal jurisdiction can thus be said to extend to them.

### Venue in the Southern District of New York

Where federal jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1391(a) provides that a civil action may be brought in the district where all plaintiffs reside, or where all defendants reside, or where the claim arose. Plaintiff contends that the claims arose in New York and hence that venue is proper in the Southern District.

■ In deciding where the claim arises for purposes of venue, district courts in New York, often use a "weight of contacts" approach. *Catsimatidis v. Innovative Travel Group, Inc.*, 650 F.Supp. 748, 752 (S.D.N.Y.1986). In applying the "weight of contacts" approach, this Court has stated that a claim arises in the district where the defendant's contacts had been most significant. *Id.* Defendants' contacts certainly have not been the most significant in the Southern District of New York. The two contracts—the Termination Agreement and Diet Center Agreement—which lie at the core of plaintiff's action were negotiated and executed in Mineola, New York, which is located in the Eastern District of New York. Pursuant to the contracts, there was not a single action that defendants were required to take in the Southern District of New York. Therefore, by the "weight of contacts" approach no claims arise in the Southern District of New York and, thus, venue is improper in this district.

### Transfer to the District of Utah

This action should be transferred to the District of Utah pursuant to 28 U.S.C. § 1406(a). Under § 1406(a), "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district in which it could have been brought." There is no doubt that plaintiff's action might have been brought in the District of Utah. Subject matter jurisdiction is undisputed, and would not be affected by the venue in which the action was brought. Personal jurisdiction over defendants is also clearly obtainable in Utah, as all de-

fendants are Utah citizens or corporations (Aff. of John L. Harmer at ¶ 21). Finally, the residence of all defendants in Utah means venue would be proper there. 28 U.S.C. § 1391(a). Since jurisdiction can be obtained and venue is proper in the District of Utah, this action can be transferred to Utah pursuant to § 1406(a). *See Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 78–79 (2d Cir.1978).

*Conclusion*

This Court concludes that while personal jurisdiction in New York State extends to defendants, venue is improper in the Southern District of New York. Since all of the defendants reside in the District of Utah, this Court orders plaintiff's action transferred to that forum pursuant to U.S.C. § 1406(a).

SO ORDERED.