**WORLDCOM TECHNOLOGIES, INC., formerly known as WorldCom, Inc., Plaintiff,**

v.

**ICC INTELECA COMMUNICATIONS, INC., a/k/a Inteleca Communications Corporation, a/k/a Inteleca Communications Corp., a/k/a ICC, Defendant.**

**No. 98 Civ. 7050 (AGS).**

United States District Court, S.D. New York.

March 4, 1999.

Richard E. Hershenson, Law Offices of Richard I. Wolff, P.C., New York City, for plaintiff.

Richard J.J. Scarola, Scarola & Reavis, New York City, for defendant.

## OPINION AND ORDER

SCHWARTZ, District Judge.

Plaintiff commenced this action to recover funds allegedly due from Defendant pursuant to a contract under which Plaintiff provided Defendant with telecommunications services. Defendant moves the Court to dismiss the complaint on the grounds that the Court (1) lacks subject matter jurisdiction over the action, and (2) lacks personal jurisdiction over Defendant. In the alternative, Defendant moves this

Court, pursuant to 28 U.S.C. § 1404(a), to transfer venue of this action to New Jersey. For the reasons stated herein, Defendant's motion is DENIED in its entirety.

### FACTUAL BACKGROUND

Hiro Nakajima ("Nakajima") is the President of Defendant, Inteleca Communications Corporation ("Inteleca" or "Defendant"). (Affidavit of Hiro Nakajima ("Nak.Aff.") ¶ 1.) Defendant is a Delaware corporation with its principal place of business in Jersey City, New Jersey. (Complaint ¶ 6.) All of Defendant's officers, employees, records, and telephone numbers are located in Jersey City.

Defendant is engaged in the sale of telecommunications services on a wholesale basis to telecommunications providers in Japan. (Nak. Aff. at ¶ 2.) Defendant's business primarily consists of purchasing telecommunications access to Brazil from international communications companies at a bulk rate, and then re-selling that access to retailers in Japan who market the lower rates to their customers. (*Id.*) Under the arrangement, a Japan-based customer may call an Inteleca computer in Jersey City and hang up; Inteleca will then immediately call the Japanese customer back in order to provide him or her with a dial tone to reach Brazil at the preferred rate. (*Id.*)

Inteleca purchased telephone access to Brazil from Sprint from 1993 until 1995. (*Id.* at ¶ 3; Affidavit of Gloria Devereaux ("Dev.Aff.") at ¶ 6.) Inteleca dealt with Sprint at its New York office at 380 Madison Avenue, New York, New York 10017. (*Id.*) In 1995, Nakajima's contact at Sprint, Gloria Devereaux, switched jobs to work for Worldcom Technologies, Inc. ("Worldcom" or "Plaintiff"), a Delaware Corporation with its principal place of business in Mississippi. (Nak. Aff. at ¶¶ 3, 4; Complaint ¶ 3.) Ms. Devereaux worked out of Worldcom's New York office, which coincidentally is in the same building as Sprint's 380 Madison Avenue. (Dev. Aff. at ¶ 6.) Nakajima agreed with Devereaux that he would place future orders with Worldcom, and Worldcom began providing Inteleca with telecommunications services in early 1996. (Nak. Aff. at ¶ 4.; Dev. Aff. at ¶ 7.)

Worldcom and Inteleca would periodically amend their contract, renegotiating (1) the price paid by Inteleca for telecommunications access to Brazil, and (2) the minimum monthly usage that Inteleca was obligated to provide Worldcom. (Nak. Aff. at ¶¶ 8–10.) The "monthly minimum" term of the contract meant that Inteleca would guarantee that Worldcom receive a certain minimum amount of telecommunications traffic from Inteleca customers, and that Inteleca would pay to Worldcom an amount representing this usage even if Inteleca failed in fact to sell enough per-minute access to its Japanese customers to collect that sum. The most recent amendment, dated April 21–22, 1998, raised the minimum monthly usage from $200,000 to $300,000 in exchange for a decrease in the per-minute access rate from $0.40 to $0.38.

Inteleca asserts that, concurrently with re-negotiating the contract to provide telecommunications access to Inteleca, Worldcom was also planning on competing with Inteleca for the Japan–Brazil market. Inteleca asserts that Worldcom went as far as to approach Inteleca's primary Japanese customer as part of this effort. (Reply Affidavit of Hiro Nakajima ("Reply Nak. Aff.") ¶ 12.) Inteleca asserts that its business was devastated because of this competition from Worldcom, and that it was therefore unable to sell enough telecommunications access to meet the $300,000 minimum. (Nak. Aff. at ¶ 22.)

Worldcom commenced this action to recover amounts due on the contract with Inteleca pursuant to the monthly minimum of $300,000. Inteleca contends that it is not liable on the contract because Worldcom negotiated the higher monthly minimum without disclosing its intention to invade Inteleca's specialized market, know-

ing that, under pressure from Worldcom's competition, Inteleca would not be able to meet that minimum. (Nak.Aff.¶ 19.) Worldcom disputes this assertion, contending, *inter alia*, that (1) Inteleca's inability to reach the $300,000 monthly minimum was not related to Worldcom's entry into the market, but rather to the declining Japanese economic situation, and (2) Worldcom had no obligation under the contract to refrain from entering Inteleca's specialized market.

Defendant moves to dismiss this action pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(2), contending that (1) the Court lacks subject matter jurisdiction because there is no federal question raised in this case, (2) the Court, sitting in New York State, lacks personal jurisdiction over Defendant, a corporation located in the State of New Jersey.[1] In the alternative, Defendant moves this Court to transfer this action to New Jersey "in the interests of justice" pursuant to 28 U.S.C. 1404(a).

## DISCUSSION

### I. THIS COURT HAS SUBJECT MATTER JURISDICTION.

■ Defendant contends that there is no federal question at issue in this case, depriving the Court of subject matter jurisdiction. Defendant relies principally on a Fifth Circuit case, *MCI Telecommunications Corp. v. Credit Builders of Am., Inc.*, 980 F.2d 1021 (5th Cir.), *vacated*, 508 U.S. 957, 113 S.Ct. 2925, 124 L.Ed.2d 676, *prior opinion reinstated*, 2 F.3d 103 (5th Cir. 1993), for the proposition that this action to recover unpaid telecommunications charges does not raise a federal question. However, in the Second Circuit, a contrary rule governs. An action such as this one, brought by a telecommunications carrier for the recovery of charges due under a tariff filed with the Federal Communications Commission, is considered an action under federal law and jurisdiction exists

pursuant to 28 U.S.C. §§ 1331 and 1337. *See AT&T Co. v. City of New York*, 83 F.3d 549, 552 (2d Cir.1996).

### II. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT.

■ Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), this Court has personal jurisdiction over Defendant so long as New York state courts would have personal jurisdiction. We conclude that this Court may assert jurisdiction over Defendant because N.Y. C.P.L.R. § 302(a)(1) would permit a New York state court to do the same.

■ Plaintiff need only make a prima facie showing that personal jurisdiction exists in order to survive a pre-answer motion to dismiss. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). This remains true even if a defendant "makes a contrary allegation that places in dispute the factual basis of plaintiff's prima facie case." *Mondo, Inc. v. Spitz*, 1998 WL 17744, *1 (S.D.N.Y. Jan.16, 1998); *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

Plaintiff has made a prima facie case that personal jurisdiction may be asserted pursuant to N.Y. C.P.L.R. § 302(a)(1) ("Section 302(a)(1)"). Section 302(a)(1) permits the assertion of jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts business within the state . . . ." Plaintiff alleges that Defendant's president came to Worldcom's Madison Avenue Office in New York 3 to 4 times a year to discuss Inteleca's relationship with Worldcom. (Plaintiff's Memorandum of Law ("Pl.Mem.") at 9.) Plaintiff contends that Defendant negotiated contracts with Worldcom during these visits, and signed the actual contract at issue in

---

**1.** Defendant also asserts that, due to the lack of personal jurisdiction, the case must be dismissed for improper venue.

Worldcom's Madison Avenue office. (*Id.*; Dev. Aff. at ¶ 19.) *See George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 847, 363 N.E.2d 551 (1977) (finding jurisdiction under § 302(a)(1) when the defendant "[1] was physically present in New York at the time the contract, establishing a continuing relationship between the parties, was negotiated and made and, [2] the contract, made in New York, was the transaction out of which the cause of action arose.")

The parties dispute whether the contract at issue was "executed" or merely signed in New York. Plaintiff asserts that the contract was executed in New York by Defendant when Nakajima signed it. Defendant disagrees, contending that Plaintiff explicitly informed Nakajima that the contract needed to be sent to Worldcom's Mississippi headquarters in order to be finally "executed" by Worldcom's officers located there, which occurred later.

Irrespective of the dispute regarding "execution," Nakajima's contacts with New York were significant in quality. Plaintiff has set forth facts demonstrating that Nakajima (1) dealt with Devereaux for many years at the Sprint's and Worldcom's New York offices, (2) visited the Madison Avenue office of Worldcom many times with regard to the specific transaction' at issue, and (3) at the very least, signed and partly negotiated the contract in Manhattan. *Cf. Pointer U.S.A., Inc. v. H & D Foods Corp.*, No. 97 Civ. 5333(TPG), 1998 WL 315464, *2 (S.D.N.Y. June 16, 1998) (finding juris-

diction when agreement was negotiated and "signed in New York.")

In addition to Defendant's president's travels to New York, Plaintiff notes that Defendant maintains a checking account at the Sanwa Bank Limited, located at 55 East 52nd Street, New York, New York 10055, which it uses for most of its income from Japan.[2] (Dev. Aff. ¶ 4; Reply Nak. Aff. at ¶ 5.) *See Bower v. Weisman*, 639 F.Supp. 532, 537 (S.D.N.Y.1986) (finding banking activities to be relevant in asserting longarm jurisdiction over a defendant). Plaintiff asserts that much, if not all, of the income derived by Defendant pursuant to the contract with Worldcom was transferred to the United States by means of a bank located in New York.[3] The use of this bank also significantly contributes to the quality of contacts that Defendant has had with New York State and this judicial district.

We therefore conclude that the quality of contacts between Defendant and New York State indicate that Defendant has "purposefully availed [itself] of the privilege of conducting activities in [New York], thus invoking the benefits and protection of [its] laws," and find that a New York State court would have personal jurisdiction over Defendant for the purposes of this action pursuant to § 302(a)(1). *See George Reiner*, 394 N.Y.S.2d at 847, 363 N.E.2d 551 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). This Court thus has jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(1)(A).[4]

**2.** Defendant's Memorandum of Law indicates that this New York branch office is used to receive wire transfers of funds from Japan. (Def's Mem. at 4.)

**3.** Although Defendant points out that this bank is a branch office of a Japan-based bank, the fact remains that the funds were transferred to a situs in New York and invoked the protections of New York law. It is irrelevant that "had there been a branch [of that bank] in New Jersey, Inteleca would have used it." (Reply Nak. Aff. ¶ 5.)

**4.** Because we find that personal jurisdiction exists over Defendant, Plaintiff's motion to

dismiss for improper venue also must be denied. 28 U.S.C. § 1391(b) provides that a federal question case may be brought in a judicial district where any defendant resides. 28 U.S.C. § 1391(c) provides that a corporate defendant resides, for the purposes of § 1391(b), in any judicial district "within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . ." All of Defendant's contacts with the State of New York discussed herein occurred in the Southern District of New York.

## III. THE ACTION WILL NOT BE TRANSFERRED TO NEW JERSEY.

 "Plaintiff's choice of forum is given significant weight and will not be disturbed unless the balance of factors weighs strongly in favor of granting the transfer." *EFCO Corp. v. Nortek, Inc.,* No.97 Civ. 1358(JSM), 1997 WL 466522, *3 (S.D.N.Y. August 13, 1997). Defendant is required to show by clear and convincing evidence why the interests of justice require that this Court transfer venue to New Jersey. *See Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 183 (S.D.N.Y.1995).

 There is no cause to transfer venue in this case. Defendant has not shown that it would be extremely inconvenient for it to litigate in this district. Defendant has failed to cite specific evidence located in New Jersey that will be difficult to bring to Manhattan, or to name witnesses located in New Jersey that will be inconvenienced by travel to New York.[5]

Additionally, this forum is convenient for Plaintiff and its witnesses. Plaintiff has at its Madison Avenue Office three employees who will likely be called as witnesses, and documentary evidence may be needed. (Dev. Aff. at ¶ 31.) Plaintiff also notes that it may call as a witness a representative from the Sanwa Bank, located in Manhattan. Finally, plaintiff points out that key events, such as the signing of the contract, occurred in Manhattan. (*Id.* at ¶¶ 31, 32.) We therefore conclude that there is no reason to transfer this action to New Jersey.

### CONCLUSION

For the reasons stated herein, Defendant's motion is DENIED in its entirety.

SO ORDERED.

---

5. It will also be noted that Jersey City is extremely close and convenient to this judicial district. Transportation between Jersey City and Manhattan costs only $1.00 on the local PATH trains.