INTERNATIONAL EQUITY INVESTMENTS, INC., and Citigroup Venture Capital Int'l Brazil, LLC, on Behalf of Itself and Citigroup Venture Capital Int'l Brazil, L.P., f/k/a CVC/Opportunity Equity Partners L.P., Plaintiffs–Counter–Defendants–Appellees,

v.

OPPORTUNITY EQUITY PARTNERS, LTD., f/k/a CVC/Opportunity Equity Partners Ltd., Defendant–Counter–Claimant–Appellant,

Daniel Valente Dantas, Defendant–Appellant,

Banco Opportunity S.A., Dorio Ferman, Arthur Joaquim De Carvalho, Opportunity Fund, Opportunity Prime Investment Services, Ltd., Defendants.

Docket Nos. 05–2862–cv(L), 05–4952–cv(CON), 06–2164–cv(CON), 06–2176–cv(CON), 06–2709–cv(CON), 06–3567–cv(CON).

United States Court of Appeals, Second Circuit.

Aug. 30, 2007.

Howard S. Zelbo, Cleary Gottlieb Steen & Hamilton LLP (Carmine D. Boccuzzi, Michael J. Byars, Anton A. Ware, on the brief), New York, N.Y., for Plaintiffs–Counter–Defendants–Appellees.

Philip C. Korologos, Boies, Schiller & Flexner LLP (Eric J. Brenner; George F. Carpinello, Boies, Schiller & Flexner LLP, Albany, N.Y., on the brief), New York, N.Y., for Defendant–Counter–Claimant–Appellant and Defendant–Appellant.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

These consolidated interlocutory appeals challenge a series of preliminary injunctions and related rulings issued by the

United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge)* preventing defendants-appellants Opportunity Equity Partners, Ltd. ("Opportunity") and Daniel Valente Dantas, (collectively, "defendants") from, *inter alia,* attempting to take from plaintiffs-appellees control over Brasil Telecom and its related entities. We assume the parties' familiarity with the facts and the (lengthy) record of the prior proceedings in this litigation.

### 1. Subject Matter Jurisdiction

■ Defendants' first argue that the District Court lacked subject matter jurisdiction to issue the preliminary injunctions that are in dispute. We disagree. Subject matter jurisdiction must be established at the time an action is commenced. *See Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 574–75, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004). When this action commenced, International Equity Investments, Inc. ("IEII")—a Delaware citizen—was the sole named plaintiff and defendants were Dantas, a citizen of Brazil, and Opportunity, a corporation organized under the laws of the Cayman Islands with its principal place of business in Brazil. Thus, by the face of the original pleadings, there was complete diversity sufficient to establish subject matter jurisdiction. *See* 28 U.S.C. § 1332(a)(2) (subject matter jurisdiction exists for actions involving "citizens of a State and citizens or subjects of a foreign state").

Defendants assert that the "real" plaintiff in interest for the initial complaint pursuant to Fed.R.Civ.P. 17(a) was not IEII, but the CVC Fund, and at the time the initial complaint was filed, Opportunity was still general partner of the CVC Fund. Defendants say that as a result, diversity was lacking because Opportunity was on both sides of the action. However, it is undisputed that the central claim of the initial complaint—that Opportunity breached its contract with IEII by refusing to step aside as general partner of the CVC Fund—belonged directly, and solely, to IEII, and thus subject matter jurisdiction existed over that claim. The possibility that some of the other claims asserted in the initial complaint were derivative is, at this point, irrelevant because even if the District Court had dismissed those claims for lack of jurisdiction, it would not have been appropriate to have dismissed the entire action given the existence of jurisdiction over plaintiffs' core breach of contract claim, and plaintiffs subsequently amended their complaint, mooting the question of whether some of the other initial claims should have been dismissed.

■ Defendants also assert that diversity jurisdiction was lacking over the first and third amended complaints ("FAC" and "TAC") because, they argue, Opportunity was a limited partner of the CVC Fund when those complaints were filed, and the complaints assert several new claims that are clearly derivative in nature and that are explicitly brought, at least in part, on behalf of the CVC Fund. As explained below, this argument fails because Opportunity was neither a general nor limited partner of the CVC Fund when the FAC was filed in April 2005 or when the TAC was filed in March 2006.

Opportunity effectuated its removal as general partner of the CVC Fund on March 18, 2005 when it registered its removal with Cayman Islands authorities. Plaintiffs assert that at that moment, Opportunity was, as it conceded before the District Court, "completely out of the CVC [F]und." Defendants contend, however, that under the CVC Fund's limited partnership agreement ("LPA"), Opportunity became a limited partner of the fund si-

multaneous to its removal as general partner.

For this proposition, defendants principally rely upon section 7.5.1 of the LPA, which provides:

*Conditions:* Notwithstanding Section 7.3 or Section 7.4 of this Agreement, no removal of the General Partner under either such Section shall be effective until a new general partner has been admitted to the Partnership and until the General Partner's Interest has been converted to a Limited Partnership Interest in the Partnership.

Defendants argue that under this provision, Opportunity's removal as general partner could only have been effective if Opportunity had been made a limited partner. This argument is problematic in several respects. First, it is not evident that Opportunity had a "General Partner's Interest," as that term is used in section 7.5.1, to convert. Opportunity never made any capital contributions to the CVC Fund, nor did it ever have any equity interest in the fund. The only tangible interest Opportunity possessed was its "carried interest," and the LPA explicitly defines the carried interest as being different than a "Partnership Interest." (The carried interest is "the General Partner's share of the Partnership's profit ...," whereas a "Partnership Interest" "means the entire ownership interest of a Partner in the fund at any time.") Moreover, upon the removal of the general partner, the LPA treats the carried interest separately from any potential "General Partner's Interest" under section 7.5.1, and defines precisely how the removed partner's carried interest is to be calculated going forward. *See* LPA § 7.5.4. Had the LPA intended to treat the carried interest as a "General Partner's Interest" pursuant to section 7.5.1, this section of the LPA surely would have included some mechanism for converting the removed partner's carried interest into a limited partnership interest.

Second, as the District Court found in a related litigation, even if we were to assume that Opportunity did possess a "General Partner's Interest" in the CVC Fund, any conversion of that interest pursuant to section 7.5.1 of the LPA would not have been self-effectuating. *See Int'l Equity Invs., Inc. v. Carla Cico,* No. 05 Civ. 9365 at *2 (S.D.N.Y. Mar.29, 2006). Rather, as the District Court explained, section 7.5.1 "provides that the conversion of the General Partner's Interest is a *condition precedent* to the effectiveness of the removal." *Id.* (emphasis added). As a condition precedent, ordinarily, removal would not be effective until the condition has been satisfied, but here it is clear that (1) Opportunity is no longer the general partner of the CVC Fund; and (2) when Opportunity effectuated its removal as general partner by filing its certification with the Cayman registrar, it never sought to have its "General Partner's Interest"—if, indeed, it had one—converted into a limited partnership interest. Thus, any purported conversion never happened.

Defendants respond that the conversion happened automatically, and so there was no need for Opportunity to insist on any separate formal act of conversion. As the District Court explained, however, under general principles of contract law, a condition precedent does not take automatic effect. *Id.* at 2–3. The LPA does not say "upon removal of the general partner, his interest *is* converted into a limited partnership interest." Indeed, the LPA is clear when it provides for actions to occur automatically. Section 9.10 provides that "upon the incapacity of a Partner, ... such incapacitated Partner *will be* converted to an Assignee only ... [and he will receive distributions] without any rights as a partner." (Emphasis added.) That provision

is self-executing in a way that Section 7.5.1 is not.

Defendants also argue that under sections 9.7 and 9.3 of the LPA, Opportunity must still be a partner of the CVC Fund. Section 9.7 provides that "The General Partner will not be removed or entitled to withdraw from being a Partner of the Fund except in accordance with section 9.3 of this Agreement." Section 9.3, in turn, provides, *inter alia,* that "The General Partner may not Transfer all or any portion of its Partnership Interest (including any amount held as a Limited Partner) without the prior written consent of 75% in Interest of the Independent Limited Partners." Defendants argue that these provisions, read together, mean that when Opportunity was removed as general partner, it was not removed from the CVC Fund altogether because that would have required a "transfer" by consent of its "Partnership Interest," which did not occur. Again, however, this argument presupposes that Opportunity had a "Partnership Interest" in the fund—and, as explained above, the LPA defines "Partnership Interest" as an "ownership interest of a Partner in the Fund," which Opportunity never possessed. Moreover, sections 9.3 and 9.7 of the LPA do not change the fact that Opportunity was, indeed, removed as general partner, and it is clear that after that removal, Opportunity no longer possessed any interest that could fairly be characterized as a limited partnership interest in the fund. We therefore conclude that when the FAC and TAC were filed, Opportunity was neither a limited nor general partner of the CVC Fund, and thus the District Court possessed, and contin-ues to possess, subject matter jurisdiction over the entirety of this dispute.[2]

### 2. The Merits of the Injunctions

In No. 05–2862–cv(L), defendants appeal the preliminary injunction issued by the District Court on June 2, 2005 and modified on June 7, 2005, and in No. 05–4952–cv(CON), defendants appeal the District Court's order filed August 12, 2005 denying defendant's motion to modify the June 2 injunction, as modified on June 7. We affirm for substantially the same reasons set forth by the District Court in *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,* 407 F.Supp.2d 483 (S.D.N.Y.2005); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,* No. 05 Civ. 2745, Tr. at 116–126 (S.D.N.Y. Jun. 7, 2005); and *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,* No. 05 Civ. 2745 (S.D.N.Y. Aug. 12, 2005). We note that the District Court acted well within its allowable discretion in concluding that the CVC Fund had control rights in Zain, S.A., and hence the entire Brasil Telecom structure, even though by itself, the fund held less than 50% voting control of Zain. Since at least March 2005, the CVC Fund has had an agreement with CVC/Opportunity Equity Partners Fundo Mútuo de Investimento em Ações–Carteira Livre (the "Onshore Fund") to use their combined 90% voting stake in Zain in concert to control Zain and the Brasil Telecom entities. Thus, absent interference by defendants, the CVC Fund has control rights over the Brasil Telecom entities; there is no support in the case law for the proposi-

---

**2.** Our conclusion in this regard does not depend on the fact that defendants conceded in their answer to the FAC that IEII "is, and was at all relevant times hereto, the sole limited partner of the CVC Fund." *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) ("Federal judicial power does not depend upon prior action or consent of the parties.") (internal citation and quotation marks omitted).

tion that only the loss of *exclusive* control rights can constitute irreparable harm.

Defendants urge that under the so-called Umbrella Agreement, Opportunity controls the Onshore Fund's voting rights, and so the agreement between the Onshore Fund and the CVC Fund to pool their control rights does not confer on these funds majority control over Zain. This argument fails because, as explained below, the District Court acted within its discretion in concluding that Opportunity cannot use the Umbrella Agreement in any way that is contrary to the interests of the CVC Fund.

█ The District Court's orders regarding the preliminary injunction issued on June 2, 2005 and modified on June 7, 2005 are therefore affirmed. We note, however, that the District Court, perhaps inadvertently, did not make explicit findings on the record as to whether any additional bond needed to be posted in connection with this injunction. We therefore remand to the District Court for the limited purpose of making findings concerning a bond pursuant to Fed.R.Civ.P. 65(c), while leaving the injunction intact. *See Corning Inc. v. PicVue Elecs., Ltd.,* 365 F.3d 156, 158 (2d Cir.2004); *Rosen v. Siegel,* 106 F.3d 28, 33 (2d Cir.1997) ("it would [be] inequitable to punish [the movant] for the district court's failure to make specific findings.") (internal quotation marks omitted).

█ In No. 06–2164–cv(CON), defendants appeal the District Court's order of April 20, 2006 preliminarily enjoining defendants from enforcing the Umbrella Agreement and denying defendants' motion to vacate or modify various portions of the preliminary injunctions issued on March 17, June 2, and June 7, 2005. In No. 06–2176–cv(CON), defendants appeal the District Court's order of April 26, 2006 declining to modify the April 20, 2006 preliminary injunction, and in No. 06–2709–cv(CON), defendants appeal the District Court's order of May 10, 2006 regarding the scope of the April 20, 2006 injunction. We affirm these orders for substantially the same reasons set forth by the District Court in *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,* 427 F.Supp.2d 491 (S.D.N.Y.2006); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,* No. 05 Civ. 2745, 2006 WL 1116437 (S.D.N.Y. Apr. 26, 2006); and *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,* No. 05 Civ. 2745, 2006 WL 1293281 (S.D.N.Y. May 10, 2006).

In so holding, we think two points merit particular emphasis. First, the District Court, in refusing to modify the March 17, June 2, and June 7, 2005 injunctions, correctly found that plaintiffs are likely to suffer irreparable harm if defendants reassert control over Zain and the Brasil Telecom entities regardless of whether defendants are restrained from taking certain actions while in control. As noted above, the CVC Fund has its own right to control the Brasil Telecom entities (in conjunction with the Onshore Fund), and any denial of that right constitutes irreparable harm in the context of this litigation.

Second, there plainly was sufficient evidence in the record for the District Court to have concluded that Opportunity became "manager of the Onshore Fund, and gained a position that enabled it to sign the Umbrella Agreement on its behalf, as a result of its relationship with Citibank." *Int'l Equity Invs., Inc.,* 427 F.Supp.2d at 500. Indeed, the Umbrella Agreement was so antithetical to the interests of the Onshore Fund that the only plausible explanation for its signing the agreement, assuming it was acting in its own self-interest, was in reliance on the Umbrella Agreement being a multiparty agreement with Opportunity properly acting as a fiduciary for both the Onshore Fund and the CVC Fund. Thus, the District Court did

not exceed its allowable discretion in drawing the inference that the Umbrella Agreement's existence depended on Opportunity acting in its role as fiduciary to the CVC Fund. Accordingly, it also was within the District Court's discretion to hold that defendants may use their positions of influence over Zain and Brasil Telecom "only in a manner consistent with the fiduciary duty they owe to [the CVC Fund], which means that they may not use them to [the CVC Fund's] detriment or to benefit themselves." *Id.* at 501.

■ Finally, in No. 06–3567, defendants appeal the preliminary injunction issued on July 26, 2006 enjoining defendants from, *inter alia*, "filing any application before any Brazilian court seeking an order reinstating [Opportunity's own directors and officers in the Brasil Telecom entities]." We affirm because we agree with the District Court that (1) plaintiffs demonstrated a threat of irreparable harm and a likelihood of success on the merits sufficient to support the issuance of the July 26, 2006 injunction; and (2) the anti-suit injunction analysis tilts strongly in plaintiffs' favor because the case bears a closer resemblance to an *in rem* or *quasi in rem* proceeding than to an *in personam* proceeding, *see China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir.1987).

We have considered all of defendants' remaining arguments and find them to be without merit. Accordingly, we AFFIRM the orders of the District Court and REMAND in part solely for the District Court to issue findings on the record regarding the posting *vel non* of a bond in connection with the preliminary injunction issued on June 2, 2005 and modified on June 7, 2005.