13-367-cv
*Wilson v. Dantas*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2013
No. 13-367-cv

ROBERT E. WILSON, III,
*Plaintiff-Appellant,*

*v.*

DANIEL VALENTE DANTAS, OPPORTUNITY EQUITY
PARTNERS, LTD., FORMERLY KNOWN AS CVC/OPPORTUNITY
EQUITY PARTNERS, LTD., OPPORTUNITY INVEST II, INC.,
CITIBANK, N.A., INTERNATIONAL EQUITY INVESTMENTS, INC.,
CITIGROUP VENTURE CAPITAL INTERNATIONAL BRASIL, L.L.C.,
CITIGROUP VENTURE CAPITAL INTERNATIONAL BRASIL, L.P.,
*Defendants-Appellees.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 12 CV 3238 — George B. Daniels, *Judge.*

————

ARGUED: DECEMBER 12, 2013
DECIDED: MARCH 6, 2014

————

Before: CABRANES, HALL, and CHIN, *Circuit Judges*.

_____

Plaintiff-appellant Robert E. Wilson, III appeals from the January 7, 2013 judgment of the District Court for the Southern District of New York (George B. Daniels, *Judge*) granting the motion to dismiss of defendant-appellee Citibank, N.A., and all related Citibank entities for failure to state a claim upon which relief can be granted.   The complaint alleges that the Citibank defendants engaged in tortious conduct and breached contractual obligations owed to Wilson, resulting in his failure to receive compensation purportedly owed to him in connection with private equity investments in Brazil.

We hold that the District Court had jurisdiction to hear the case under the Edge Act, 12 U.S.C. § 632, because Wilson's claims arose out of a foreign financial operation, and that it properly dismissed Wilson's claims against the Citibank defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Accordingly, we **AFFIRM** the judgment of the District Court.

_____

> TERRANCE G. REED, Lankford & Reed, PLLC, Alexandria, VA (Peter F. Langrock, Devin McLaughlin, Langrock, Sperry & Wool, LLP, Middlebury, VT; Martin F. Gusy, Gusy Van der Zandt LLP, New York, NY, *on the brief*), *for Robert E. Wilson, III*.
>
> Philip C. Korologos, Boies, Schiller & Flexner LLP, New York, NY, *for Daniel Valente Dantas,*

> *Opportunity Equity Partners, Ltd., Opportunity Invest II, Inc.*
>
> CARMINE D. BOCCUZZI (Howard S. Zelbo, Anthony M. Shults, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Citibank, N.A., International Equity Investments, Inc., Citigroup Venture Capital International Brasil, LLC, Citigroup Venture Capital International Brasil, LP*.

––––––––

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff-appellant Robert E. Wilson, III appeals from the January 7, 2013 judgment of the District Court for the Southern District of New York (George B. Daniels, *Judge*) granting the motion to dismiss of defendant-appellee Citibank, N.A. and all related Citibank entities (the "Citibank defendants") for failure to state a claim upon which relief can be granted. The complaint alleges that the Citibank defendants engaged in tortious conduct and breached contractual obligations owed to Wilson, resulting in his failure to receive compensation purportedly owed to him in connection with private equity investments in Brazil.

We hold that the District Court had jurisdiction to hear the case under the Edge Act, 12 U.S.C. § 632, because Wilson's claims arose out of a foreign financial operation, and that it properly dismissed Wilson's claims against the Citibank defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, we **AFFIRM** the judgment of the District Court.

**BACKGROUND**

Wilson's complaint alleges the following facts, which are presumed to be true for the purposes of this appeal. While employed by Citibank in the 1990s, Wilson designed an investment program to create a large private-equity fund targeting government-owned Brazilian companies that were being privatized. Beginning in 1997, with the approval of Citibank's upper management, Wilson created a limited partnership, CVC/Opportunity Equity Partners, LP (the "Partnership"), as an umbrella organization to oversee the investment program. The Partnership was comprised of the limited partner, Citibank through its subsidiary International Equity Investments, Inc. ("IEII"), and the general partner, Opportunity Equity Partners, Ltd. ("OEP"), an entity Wilson created with the assistance of a Brazilian investment advisor Daniel Valente Dantas and his related entities (the "Opportunity defendants").

Pursuant to the Limited Partnership Agreement, OEP was charged with managing and administering the underlying funds into which the Partnership's investors placed money for the private equity investments. The co-investors in the Partnership were IEII, Brazilian pension funds, and the Opportunity defendants. Under the terms of the Operating Agreement, each investor would receive a pro rata ownership interest in the stock of the Partnership's portfolio companies.

In 1997, Wilson voluntarily resigned from Citibank, and relocated to Brazil to participate in the general management of OEP. Prior to joining OEP, Wilson personally negotiated an employment agreement with Dantas, under which Wilson was entitled to 5% of the "carried interest," *i.e.*, 5% of the total profits from the investments owed to OEP as general partner. Wilson also entered into OEP's Shareholder Agreement, which provided that OEP

would have 100 shares, of which Wilson and three other founding principals each acquired one share. The remaining ninety-six shares were owned by a Dantas-controlled entity. Each of the individual shareholders and Dantas were made Directors of OEP, and devoted their full time to managing the investments. From 1997 through 2008, the Partnership made ten large investments in Brazilian companies, resulting in substantial profits for the Citibank defendants and the Opportunity defendants.

In 2005, Citibank, through its wholly-owned subsidiary IEII, allegedly terminated OEP's status as general partner, and appointed CVC Brasil LLC, an IEII subsidiary, as the successor general partner. This led to litigation among the Citibank defendants, Dantas, and OEP, culminating in a confidential settlement agreement in April 2008, to which Wilson was not privy. The settlement resulted in the winding down of the private-equity investments and distribution of the accompanying profits.

On March 23, 2012, plaintiff commenced the present suit in New York state court against the Citibank defendants and the Opportunity defendants. On April 26, 2012, Citibank removed the case to the District Court pursuant to the Edge Act, 12 U.S.C. § 632.[1] The claims in Wilson's complaint stem from the defendants' alleged failure to honor contractual commitments to pay him for his work at OEP. On January 7, 2013, the District Court granted the motion to dismiss all claims asserted against the Citibank defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and declined

---

[1] The relevant portion of 12 U.S.C. § 632 states that

all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits.

to exercise supplemental jurisdiction over the remaining state-law claims asserted against the Opportunity defendants. This timely appeal followed.

## DISCUSSION

We review *de novo* a district court's order granting a motion to dismiss under Rule 12(b)(6), "accepting as true all allegations in the complaint and drawing all reasonable inferences in favor of the non-moving party." *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### A. Jurisdiction

Although not raised by either party, we must "take[] it upon ourselves to determine whether removal jurisdiction existed even where that issue was not itself appealed." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 121 (2d Cir. 2007). To be removable under the Edge Act, 12 U.S.C. § 632, an action must: (1) be a civil suit, (2) have a federally chartered corporation as a party, and (3) arise "'out of transactions involving international or foreign banking, [including territorial banking], or out of *international or foreign financial operations*.'" *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 780–81 (2d Cir. 2013) (emphasis supplied) (quoting 12 U.S.C. § 632).

The Edge Act does not define the term "international or foreign financial operations," nor has it been defined in our case law. Under the plain meaning of the phrase, however, Edge Act jurisdiction extends to those foreign operations that consist of "[t]he act or process of raising or providing funds," including "[t]he raising of funds by issuing capital securities (shares in the business)." *See* Black's Law Dictionary 707 (9th ed. 2009) (defining "financing" and "equity financing"); *see also Stamm v. Barclays Bank of N.Y.*, 960 F. Supp. 724, 728 (S.D.N.Y. 1997) (defining "financial operations" as "those operations that provide . . . capital or loan money as needed to carry on business" (internal quotation marks omitted)). In addition, "the suit must arise out of an offshore banking or financial transaction *of that federally chartered corporation*" that is a party to the suit. *Am. Int'l Grp.*, 712 F.3d at 784 (emphasis supplied).

In the instant case, the first two requirements are met because this is a civil suit and Citibank is a federally chartered U.S. bank. With regard to the third requirement, Wilson alleges that this case involves an international investment program that made numerous transactions involving private-equity investments in Brazilian companies. Pursuant to this program, the Citibank defendants allegedly contributed $750 million in return for stock in the portfolio companies, and they managed partnership funds from 2005 onward. Wilson claims that the Citibank defendants violated fiduciary duties and contractual obligations owed to him pursuant to the program. Accordingly, jurisdiction is proper under the Edge Act.

## B. Rule 12(b)(6) Dismissal

Turning to the merits, we address Wilson's tort and contract claims in turn.

### 1. Tort Claims

The District Court dismissed Wilson's claim in Count One for breach of fiduciary obligation for failure to allege the existence of a fiduciary duty between Wilson and the Citibank defendants. Wilson argues that this holding is erroneous because Citibank owed a fiduciary duty to OEP, which should extend to Wilson because "the relation between OEP, Ltd. and Wilson was not that of a mere shareholder to a corporation [as the District Court held], but rather that of a quasi-partner in a quasi-partnership." Appellant's Br. 53.

As Citibank rightly asserts, however, the relationship between Wilson and OEP does not create a fiduciary relationship between Wilson and the Citibank defendants. A fiduciary relationship between OEP's shareholders and Citibank cannot arise by virtue of the organizational structure outlined in OEP's Shareholder Agreement, to which Citibank was not a party. *Cf. United States v. Falcone*, 257 F.3d 226, 234 (2d Cir. 2001) (noting that "a fiduciary duty cannot be imposed unilaterally by entrusting a person with confidential information" (internal quotation marks omitted)). In the absence of mutual intent on the part of Wilson and the Citibank defendants to create a fiduciary relationship, any reliance or trust Wilson unilaterally placed in the Citibank defendants was insufficient to create a fiduciary relationship. *Cf. Bianchi v. Midtown Reporting Serv., Inc.*, 959 N.Y.S.2d 788, 789 (4th Dep't 2013) (noting that the existence of a partnership depends upon, *inter alia*, the express or implied intent of the parties).[2]

Wilson also claims in Count One that the Citibank defendants aided and abetted the Opportunity defendants' breach of their

---

[2] Because Wilson was not in a fiduciary relationship with Citibank, his constructive fraud claim also fails. *See Klembczyk v. Di Nardo*, 705 N.Y.S.2d 743, 744 (4th Dep't 1999) ("The elements of constructive fraud are the same as those for actual fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties.").

fiduciary duty to him. Specifically, Wilson alleges that the Citibank defendants excluded Wilson from their litigation with Dantas and OEP, and then entered into a confidential settlement agreement precluding Wilson from obtaining the information necessary to enforce his right to "carried interest." Yet no authority exists for the proposition that a litigating party aids and abets an injury to a third party by entering into a confidential settlement agreement in the normal course of litigation.

In the alternative, Wilson alleges that the Citibank defendants instructed Dantas not to pay Wilson the "carried interest" that had been promised to him. Such an allegation is implausible, however, as the Citibank defendants had no incentive or reason to prevent the Opportunity defendants from paying their employees out of profits earned by OEP, nor does Wilson suggest one. As the District Court rightly found, the Citibank defendants' strategic decisions in their litigation against Dantas and OEP were motivated by nothing more than appropriate economic self-interest.[3]

In Count Two, Wilson asserts a fraudulent concealment claim against the Citibank defendants, also premised on Citibank's negotiation of a confidential settlement agreement with the Opportunity defendants. The District Court dismissed this claim for, *inter alia*, failure to allege an intent to defraud. *See TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 90–91 (2d Cir. 2005) (fraudulent concealment requires a plaintiff to allege, *inter alia*, an intent to defraud). Wilson argues on appeal that such intent exists because, by keeping the settlement confidential, Citibank sought to eliminate Wilson's ability to obtain the compensation purportedly owed to him under the Limited Partnership Agreement. Again, such a motive is neither alleged in the Complaint, nor plausible. The

---

[3] For similar reasons, Wilson's tortious interference claims in Count Three, which are premised upon allegations of misconduct during the course of litigation, also fail.

far more plausible inference is that Citibank's motive was to end nearly four years of contentious litigation with Dantas, and, as discussed next, Wilson's right to seek compensation stemmed not from the Limited Partnership Agreement, but solely from OEP's Shareholder Agreement and Wilson's agreement with Dantas.[4]

## 2. Contract Claims

Wilson's contract claims similarly lack merit.  Wilson asserts a breach of contract claim in Count Seven against CVC Brasil—the Citibank subsidiary that took over as General Partner in 2005—on the theory that, under the Limited Partnership Agreement, CVC Brasil assumed the obligation to compensate Wilson when it replaced OEP as General Partner.

Wilson's reliance on the Limited Partnership Agreement is misplaced inasmuch as the agreement, to which Wilson was not a party, expressly disclaims the existence of any third-party beneficiaries.  *See* Limited Partnership Agreement § 13.15 ("This Agreement . . . is entered into for the sole and exclusive benefit of the General Partner and the Limited Partners . . . and no other Person will have any rights hereunder . . . .").  Moreover, there is no evidence that any provisions in the Limited Partnership Agreement grant enforceable rights to any entity other than the General and Limited Partner.

Indeed, courts within this Circuit have consistently held that "even where a contract expressly sets forth obligations to specific individuals or categories of individuals, those individuals do not have standing to enforce those obligations by suing as third-party beneficiaries when the contract contains a negating clause."  *In re*

---

[4] As Wilson has not alleged any actionable torts, his claim for civil conspiracy in Count Five also fails.  *See Anesthesia Assocs. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr.*, 873 N.Y.S.2d 679, 685 (2d Dep't 2009) (requiring allegations of an "actionable, underlying tort" to plead civil conspiracy).

*Lehman Bros. Holdings Inc.*, 479 B.R. 268, 275–76 (S.D.N.Y. 2012). For instance, in *India.Com, Inc. v. Dalal*, 412 F.3d 315 (2d Cir. 2005), we held that "the mention of [a third party] in the contract as a broker entitled to a commission is insufficient to confer third-party status where the parties themselves are explicit that they did not intend to create third-party beneficiaries." *Id.* at 322*; cf.* D*iamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp*, 918 N.Y.S.2d 73, 75 (1st Dep't 2011) (construing negating clause to exclude plaintiffs "in light of the numerous contract provisions granting plaintiffs enforceable rights"). Accordingly, in light of the negating clause, and lack of any other clause affirmatively granting him rights, Wilson may not rely upon the Limited Partnership Agreement to enforce contractual rights owed to him and purportedly assumed by CVC Brasil.

Wilson also alleges several quasi-contract claims in Counts Four and Eight, including promissory estoppel and unjust enrichment. "To establish a viable cause of action sounding in promissory estoppel, a plaintiff must allege," among other elements, "a clear and unambiguous promise." *Rogers v. Town of Islip*, 646 N.Y.S.2d 158, 158 (2d Dep't 1996). The sole allegation of a "promise" in Wilson's complaint is that, "[i]n reliance upon Citibank's judgment and assurances that Plaintiff would receive the compensation promised in writing by Dantas, Plaintiff relocated . . . to Brazil." Joint App'x 24. Whether this "assurance" amounted to a promise by Citibank to indemnify Wilson in the event that Dantas breached the contract is neither clear nor unambiguous. With regard to Wilson's unjust enrichment claim, it was the Opportunity defendants and Dantas, *not* the Citibank defendants, who allegedly owed Wilson the "carried interest." Since the Citibank defendants were never contractually obligated to pay Wilson, they were not enriched at his expense.

## CONCLUSION

To summarize, we hold that:

(A1)  Under the Edge Act, the term "international or foreign financial operations" encompasses those foreign operations that consist of the act or process of raising or providing funds, including the raising of funds by issuing capital securities.

(A2)  Jurisdiction under the Edge Act is proper here.  This is a civil suit, Citibank is a federally chartered U.S. bank, and Wilson's claims arise out of numerous transactions involving Citibank's private-equity investments in Brazilian companies.

(B)  The District Court properly dismissed Wilson's tort and contract claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

For the reasons stated above, we **AFFIRM** the judgment of the District Court, entered January 7, 2013.