[9 NYS3d 187]

Robert E. Wilson, III, Appellant, v Daniel Valente Dantas et al., Respondents, et al., Defendants.

First Department, April 14, 2015

178

**APPEARANCES OF COUNSEL**

*Cozen O'Connor*, New York City (*Matthew J. Weldon* and *Martin Gusy* of counsel), and *Lankford & Reed, PLLC*, Alexandria, Virginia (*Terrance G. Reed* of the Virginia and District of Columbia bars, admitted pro hac vice, of counsel), for appellant.

*Boies, Schiller & Flexner LLP*, New York City (*Philip C. Korologos, William D. Marsillo* and *Benjamin D. Battles* of counsel), for respondents.

**OPINION OF THE COURT**

Acosta, J.

In this appeal we consider whether New York courts may exercise personal jurisdiction over defendants based on the establishment of a foreign investment program, where the operative contracts establishing the program were negotiated and executed in New York. Plaintiff appeals from an order dismissing his claims against defendants Dantas, Opportunity Equity Partners, Ltd., and Opportunity Invest II, Inc. (collectively, the Opportunity defendants or defendants) for lack of personal jurisdiction.[1] We find that, because plaintiff's claims arise from defendants' transaction of business in New York, CPLR 302 (a) (1) confers personal jurisdiction over defendants.

Background

The complaint alleges the following facts, which are relevant to this appeal and accepted as true for the purposes of a motion to dismiss.[2] In the 1990s, a number of government-owned enterprises in Brazil were undergoing privatization in response to the country's economic woes. Plaintiff, a Citibank employee at the time, devised a side-by-side investment program to enable Citibank to invest in the privatizations.[3] Because the U.S. Office of the Comptroller of the Currency precluded Citibank from investing directly in Brazil, the investment scheme relied on the formation of a Cayman Islands investment fund targeted

---

1. Defendants Citibank, N.A., International Equity Investments, Inc., Citigroup Venture Capital International Brasil, L.L.C., and Citigroup Venture Capital International Brasil, L.P. (collectively, the Citibank defendants) are no longer parties to this action, since they successfully removed the case to federal court, where plaintiff's claims against them were dismissed.

2. The relatively complicated facts are succinctly stated in the order by the motion court in this action (40 Misc 3d 1236[A], 2013 NY Slip Op 51439[U] [2013]), and with greater detail in the related federal case of *Wilson v Dantas* (2013 WL 92999, 2013 US Dist LEXIS 3475 [SD NY, Jan. 7, 2013, No. 12 Civ 3238 (GBD)], *affd* 746 F3d 530 [2d Cir 2014]).

3. The side-by-side investment strategy, as explained in the complaint, entailed investing

"in conjunction with other co-investors, and then divest[ing] these holdings at an appropriate time under the same terms and conditions to maximize the return on investment and to generate profits on a pro rata basis for all participants from the divestment of the portfolio controlled by the General Partner [Opportunity Equity Partners, Ltd. (OEP)]."

at Brazil. Citibank, defendant Dantas, and plaintiff created the fund, a limited partnership eventually named Opportunity Equity Partners, L.P. (the Fund). In order to manage the Fund and two co-investment entities that would invest alongside it— one of which was defendant Opportunity Invest II, Inc. (OI-II), a British Virgin Islands corporation controlled by Dantas—the parties created a general partner entity known as Opportunity Equity Partners, Ltd. (OEP), headed by Dantas.

At Citibank's direction, plaintiff moved to Brazil in or around August 1997 to assist with the management of the Fund as an employee and shareholder of OEP with a 1% ownership interest. Before departing from New York and joining OEP, plaintiff negotiated those terms and secured a promise from Dantas that he would receive 5% of the "carried interest" (i.e., the total profits owed to OEP).

In order to fully implement the investment plan, Citibank's New York lawyers drafted several contracts, which included an operating agreement (setting forth the terms of the investment program between the Fund and the co-investors and designating plaintiff and Dantas, among others, as principals of OEP), a limited partnership agreement (entered into between Citibank entities and the Fund), and a shareholders' agreement for OEP (between plaintiff, defendants, and others, setting forth the terms of compensation and the ownership interests of the shareholders). In December 1997, the parties met in New York and simultaneously executed all three agreements.

In 2005, Citibank commenced an action against the Opportunity defendants in the Southern District of New York in order to take control of the Fund and replace the original general partner, OEP, with a wholly owned subsidiary of Citibank (CVC Brasil LLC). Citibank claimed that Dantas and OEP breached fiduciary duties and contractual obligations under the operating agreement and limited partnership agreement. That litigation, to which plaintiff was not a party, ended in 2008 with a confidential settlement agreement. Plaintiff alleges that the settlement agreement resulted in the distribution of profits, including the portion of the carried interest to which he was entitled, and that Dantas and OEP had previously represented to him that he would receive his 5% stake in the carried interest as part of the settlement. To date, plaintiff has not received that compensation, and defendants have refused to disclose to him the terms of the settlement agree-

ment, despite his contention that the shareholders' agreement entitles him to access to all information about the business and financial affairs of OEP.

In March 2011, plaintiff commenced a federal action against the Citibank defendants and the Opportunity defendants in the Southern District of New York (the 2011 SDNY litigation). The district court dismissed the action without prejudice for lack of subject matter jurisdiction, having determined that plaintiff was an American citizen domiciled in Brazil and therefore could not invoke diversity of citizenship under 28 USC § 1332.

In March 2012, plaintiff commenced the instant action in Supreme Court, seeking compensation allegedly owed to him for his role in the side-by-side investment program. He alleges that defendants earned billions of dollars in profits but never paid him the 5% of the carried interest promised to him by Dantas and mentioned in the shareholders' agreement. The Citibank defendants removed the action to the Southern District of New York and obtained a dismissal of the claims against them on the merits. The court declined to exercise supplemental jurisdiction over the Opportunity defendants and remanded plaintiff's remaining claims to Supreme Court, which granted defendants' motion to dismiss, finding that personal jurisdiction does not arise from the language of the agreements or under New York's long-arm statute (CPLR 302).

Plaintiff appeals, and we now modify the motion court's order.

Discussion

Under New York's long-arm jurisdiction statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state" (CPLR 302 [a] [1]). "By this single act statute . . . proof of one transaction in New York is sufficient to invoke jurisdiction . . . so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71 [2006] [internal quotation marks omitted], *cert denied* 549 US 1095 [2006]). Determining whether long-arm jurisdiction exists under the "transacts any business" provision of CPLR 302 (a) (1), therefore, is a two-pronged inquiry: "a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether [the] cause of action aris[es] from such a business transaction" (*Licci v Lebanese*

*Can. Bank, SAL,* 20 NY3d 327, 334 [2012] [internal quotation marks omitted]; *see also Johnson v Ward,* 4 NY3d 516, 519 [2005]). Both prongs must be met in order for personal jurisdiction to attach (*Johnson,* 4 NY3d at 519). "In effect, the 'arise-from' prong limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims in some way arguably connected to the transaction" (*Licci,* 20 NY3d at 339-340).

The assertion of personal jurisdiction must also be predicated on a defendant's "minimal contacts" with New York to comport with due process (*George Reiner & Co. v Schwartz,* 41 NY2d 648, 650 [1977]; *International Shoe Co. v Washington,* 326 US 310, 316 [1945]). This requires an examination of the "quality and the nature of the defendant's activity" and a finding of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protection of its laws" (*George Reiner & Co.,* 41 NY2d at 650-651 [internal quotation marks and emphasis omitted], quoting *Hanson v Denckla,* 357 US 235, 253 [1958]; *see also Licci,* 20 NY3d at 338).

 The first prong of the inquiry, whether the Opportunity defendants transacted any business in New York, is satisfied, based on the shareholders' agreement as well as the broader transaction establishing and implementing the side-by-side investment structure. First, contrary to the dissent's position, plaintiff alleges that the shareholders' agreement outlining his compensation was negotiated *and* executed in New York. The Opportunity defendants look only to plaintiff's elaboration of his personal jurisdiction argument in annex A of the complaint to support the contention that plaintiff failed to allege that the shareholders' agreement was negotiated in New York. The body of the complaint, however, contains allegations that the agreement was negotiated here. Paragraph 21 of the complaint alleges that "the New York lawyers for Citibank drafted a variety of contractual documents in New York." Paragraph 24 further states that "[a]mong the documents drafted by Citibank's lawyers was a Shareholder Agreement for the General Partner CVC/Opportunity Equity Partners Ltd."

Accepting as true the allegation that all three agreements were drafted in New York by Citibank's lawyers, and drawing inferences in the plaintiff's favor, as we must on a motion to dismiss under CPLR 3211 (a) (8) (*see Whitcraft v Runyon,* 123 AD3d 811 [2d Dept 2014]), we must infer that defendants engaged in negotiations with Citibank in New York so that

those agreements could be drafted; it is hardly believable that defendants would have attended a meeting in New York in December 1997 to execute these complex contracts without having negotiated their terms. Moreover, plaintiff alleges that Citibank's lawyers drafted the documents *in New York*. To determine that the agreements were not at least partially negotiated here, as the dissent would have us do, is to draw inferences in defendants' favor. Contrary to the dissent, however, our inference is appropriate, especially because there has been no discovery. And regardless, "the nature and purpose of a solitary business meeting conducted for a single day in New York may supply the minimum contacts necessary to subject a nonresident participant to the jurisdiction of our courts" (*Presidential Realty Corp. v Michael Sq. W.*, 44 NY2d 672, 673 [1978]). This was not a "purely ministerial" act of merely executing a contract in New York that had been negotiated elsewhere, which would likely be insufficient to confer personal jurisdiction (*see Abbate v Abbate*, 82 AD2d 368, 384 [2d Dept 1981]; *see also Presidential Realty Corp.*, 44 NY2d at 673-674; Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C302:6). Therefore, although the complaint may have been inartfully drafted in part, we infer from the complaint that the shareholders' agreement was negotiated in New York.

In any event, even if the shareholders' agreement had not been negotiated in New York, defendants do not dispute that plaintiff alleges that the other two contracts were negotiated and executed here. As discussed below, those contracts (in conjunction with the shareholders' agreement) comprise a broader transaction of business in New York from which plaintiff's causes of action arise for the purposes of personal jurisdiction. Moreover, "the statutory test may be satisfied by a showing of other purposeful acts performed by [defendants] in this State in relation to the contract, albeit preliminary or subsequent to its execution" (*Longines-Wittnauer Watch Co. v Barnes & Reinecke*, 15 NY2d 443, 457 [1965], *cert denied* 382 US 905 [1965]; *see also George Reiner & Co.*, 41 NY2d at 651 [discussing *Longines*]). Defendants entered New York to negotiate and execute contracts with New York entities and others for the purpose of establishing a large investment plan. The transaction laid the foundation for a continuing relationship between the parties, including Citibank in New York, which lasted for nearly a decade (*see George Reiner & Co.*, 41 NY2d

at 653).[4] In sum, defendants purposefully availed themselves of New York law by engaging in those negotiations, being physically present in New York at the time the contract was made,[5] and thereby establishing a continuing relationship between the parties (*see id.*).[6] Therefore, based on the totality of the circumstances and viewing the transaction as a whole, the Opportunity defendants can be said to have transacted business in New York (*see Scheuer v Schwartz*, 42 AD3d 314, 316 [1st Dept 2007]; *see also Hi Fashion Wigs v Hammond Adv.*, 32 NY2d 583, 587 [1973]).

Next, we must determine whether plaintiff's causes of action "arise from" defendants' New York contacts. The standard does not require plaintiff to have been involved in the transaction (*see generally Licci*, 20 NY3d 327); rather, plaintiff need only demonstrate that, "in light of all the circumstances, there [is] an articulable nexus or substantial relationship between the business transaction and the claim asserted" (*Licci*, 20 NY3d at 339 [citations and internal quotation marks omitted]). The Court of Appeals "ha[s] consistently held that causation is not required, and that the inquiry under the statute is relatively permissive" (*id.*).

Indeed, *Licci* illustrated just how permissive the standard is, when it found personal jurisdiction over a defendant bank that allegedly transferred money from a New York correspondent account to a foundation that used the money to finance rocket attacks in a foreign country (*id.* at 340-341). Although the plaintiffs' cause of action for breach of statutory duties arose indirectly from the defendant bank's New York contacts— because "the specific harms suffered by plaintiffs flowed not from [the bank's] alleged support of a terrorist organization,

---

4. Plaintiff alleges that, between 1997 and 2008, the parties engaged in daily or weekly phone calls and physical meetings while implementing the investment plan in Brazil, part of which related to the shareholders' agreement, as discussed below, and while brokering the 2008 settlement.

5. It is of no consequence that defendants may have been physically absent from New York during the contract negotiations, because they were physically present during the contract signing, and, in any event, the Court of Appeals has "recognized CPLR 302 (a) (1) long-arm jurisdiction over commercial actors and investors using electronic and telephonic means to project themselves into New York to conduct business transactions" (*Deutsche Bank Sec., Inc.*, 7 NY3d at 71).

6. Plaintiff further alleges that, while he was still employed by Citibank in New York, he personally negotiated his compensation with defendant Dantas. This provides an additional allegation that Dantas purposefully transacted business with plaintiff in New York.

but rather from rockets"—the Court found that the bank's deliberate and frequent use of a New York account "to effect its support of [the foundation] and shared terrorist goals" satisfied CPLR 302 (a) (1) because "at least one element [of plaintiff's claim arose] from the New York contacts" (*see id.*). Accordingly, the plaintiffs' claim was not " 'too attenuated' from the transaction, or 'merely coincidental' with it" (*id.* at 340, quoting *Johnson*, 4 NY3d at 520).

■ Here, plaintiff's causes of action are even more closely related to defendants' New York contacts than was the case in *Licci*. To the extent his claims arise "solely" from the shareholders' agreement, as the motion court determined, there is an articulable nexus between that transaction and his claims, because the shareholders' agreement was formed in New York and his claims seeking compensation arise directly from it. Yet *Licci* dictates that we should not view the "arising from" prong so narrowly. That is, for the purposes of personal jurisdiction under CPLR 302 (a) (1), plaintiff's causes of action do not arise "solely" from the shareholders' agreement. Rather, his compensation was simply one component of a much broader business transaction, the establishment of the side-by-side investment program. The shareholders' agreement was drafted by Citibank's New York lawyers and simultaneously executed with the other two operative agreements; despite the contracts' different forum selection clauses and merger clauses,[7] there was an articulable nexus between plaintiff's claim for compensation and the overall transaction that occurred in New York and the resulting investment scheme that continued for nearly a decade (*cf. Copp v Ramirez*, 62 AD3d 23, 30 [1st Dept 2009], *lv denied* 12 NY3d 711 [2009]). Indeed, the shareholders' agreement was part of an integrated whole: among other things, it created ownership interests in OEP and required the shareholders to comply with the terms of the operating agreement and limited partnership agreement. As in *Licci*, the facts as alleged surpass the minimum requirement of "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former" (*Licci*, 20 NY3d at 339).

Contrary to the dissent's conclusion, our decision is not "at odds" with the Second Circuit's decision in *Wilson v Dantas*

---

7. Because of our conclusion that personal jurisdiction is conferred by CPLR 302 (a) (1), we need not reach the question of whether personal jurisdiction may be based on the interrelation of the three agreements and their various forum selection and merger clauses.

(746 F3d 530 [2d Cir 2014]). While the Second Circuit determined that "Wilson's right to seek compensation stemmed . . . solely from OEP's Shareholder Agreement and Wilson's agreement with Dantas" (746 F3d at 537) in affirming the dismissal of his tort and contract claims against the *Citibank defendants on the merits*, the court did not make that determination with respect to *personal jurisdiction over the Opportunity defendants*. Similarly, the dissent overlooks a critical distinction between an "arising from" inquiry to determine the merits of a claim and one to determine whether personal jurisdiction exists over the defendants. As the *Licci* Court noted, the standards for deciding an "arising from" inquiry regarding personal jurisdiction "connote, at a minimum, a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, *regardless of the ultimate merits of the* claim" (*Licci*, 20 NY3d at 339 [emphasis added]). The Court continued by approvingly quoting the Second Circuit's certification of the questions for review, which stated in relevant part, " '[T]he jurisdictional nexus analysis directs [the court] to consider the relationship between . . . plaintiffs' claims and [the bank's] alleged transactions in New York,' not 'reach[ ] a conclusion that properly bears upon the ultimate merits of plaintiffs' claims' " (*Licci*, 20 NY3d at 339 n 10, quoting *Licci ex rel. Licci v Lebanese Can. Bank, SAL*, 673 F3d 50, 67-68 [2d Cir 2012]). Thus, as *Licci* illustrates, it is appropriate to view a business transaction through a broader lens when determining whether a plaintiff's claim arises from that transaction so as to confer personal jurisdiction over a defendant.

Finding that New York courts have personal jurisdiction over defendants in this case also comports with due process. "[S]o long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction" (*Deutsche Bank Sec., Inc.*, 7 NY3d at 71). Such is the case before us. Defendants had sufficient minimum contacts with New York by purposefully entering the state to negotiate and execute contracts with Citibank, a New York entity, and Wilson. Those contracts established an ongoing relationship between the parties that lasted nearly 10 years. Two of the contracts (the operating agreement and limited partnership agreement) included New York forum selection clauses, and, although the

shareholders' agreement included a Cayman Islands forum selection clause, the clause is non-exclusive and the agreement was substantially related to the broader transaction establishing the investment program, so defendants should have reasonably expected to defend their actions in New York.

■ Furthermore, we reject defendants' contention that the case should be dismissed on the ground of forum non conveniens, the application of which is "a matter of discretion to be exercised by the trial court and the Appellate Division" (*Islamic Republic of Iran v Pahlavi*, 62 NY2d 474, 478 [1984], *cert denied* 469 US 1108 [1985]). Here, defendants have "failed to meet the heavy burden of demonstrating that plaintiff's selection of New York is not in the interest of substantial justice" (*Yoshida Print. Co. v Aiba*, 213 AD2d 275, 275 [1st Dept 1995]). Although, as the dissent notes, the shareholder's agreement contains a Cayman Islands choice of law provision and the "applicability of foreign law is an important consideration . . . and weighs in favor of dismissal" (*Flame S.A. v Worldlink Intl. [Holding] Ltd.*, 107 AD3d 436, 438 [1st Dept 2013], *lv denied* 22 NY3d 855 [2013]), this case involves only one foreign jurisdiction's law (that of the Cayman Islands), as opposed to the laws of three foreign jurisdictions that merited dismissal on forum non conveniens grounds in *Flame S.A.* The burden on New York courts, therefore, is diminished.[8] This case is also distinguishable from *Flame S.A.*, where "th[e] case ha[d] no tie to New York" aside from the plaintiff's attempt to enforce a federal district court judgment that "merely recognized" a foreign judgment (107 AD3d at 438). While the remaining parties in this action are nonresidents of New York, the side-by-side investment program was designed and the related contracts negotiated and signed in New York, several of the entities involved are located here, and plaintiff argues that many of the witnesses and documents related to the litigation are here (*see Banco Ambrosiano v Artoc Bank & Trust*, 62 NY2d 65, 74 [1984]). Moreover, we perceive no undue hardship to defendants, who entered New York to transact business and continued to have contacts with New York entities during the performance of the contracts. Conversely, plaintiff notes that there is no right to a jury trial

---

8. While the dissent points out that plaintiff's complaint relies on "section 94 (d) of the Caymans Companies Law" and "calls for relief '[i]n accordance with the procedure followed by the courts of the Cayman Islands, and the Privy Council,'" that call for relief only relates to plaintiff's plea for a declaratory judgment, which we are dismissing, as discussed below.

in either Brazil or the Cayman Islands, thus causing a "potential hardship to plaintiff[ ] if [he is] required to litigate the matter in [a foreign jurisdiction] where there is no right to trial by jury" (*Gyenes v Zionist Org. of Am.*, 169 AD2d 451, 452 [1st Dept 1991]; *see also Neville v Anglo Am. Mgt. Corp.*, 191 AD2d 240, 242-243 [1st Dept 1993]).[9] As such, defendants have not established the existence of "another forum 'which will best serve the ends of justice and the convenience of the parties' " (*Banco Ambrosiano*, 62 NY2d at 74, quoting *Silver v Great Am. Ins. Co.*, 29 NY2d 356, 361 [1972]).

Therefore, the complaint should be reinstated, although not in its entirety. Dismissal of the third cause of action, which alleges tortious interference with contract, is warranted, because defendants are parties to the shareholder agreement and, thus, could not have tortiously interfered with plaintiff's right to payment thereunder (*Koret, Inc. v Christian Dior, S.A.*, 161 AD2d 156 [1st Dept 1990], *lv denied* 76 NY2d 714 [1990]). The fifth cause of action, which alleges civil conspiracy, should also be dismissed because "[w]hile a plaintiff may allege, in a claim of fraud or other tort, that parties conspired, the conspiracy to commit a fraud or tort is not, of itself, a cause of action" (*Hoeffner v Orrick, Herrington & Sutcliffe LLP*, 85 AD3d 457, 458 [1st Dept 2011]). Furthermore, the ninth cause of action, which seeks a declaratory judgment should be dismissed since "plaintiff has an adequate, alternative remedy in another form of action" (*see Apple Records v Capitol Records*, 137 AD2d 50, 54 [1st Dept 1988]).

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered August 27, 2013, which granted defendants Daniel Valente Dantas, Opportunity Equity Partners, Ltd. and Opportunity Invest II, Inc.'s motion to dismiss the complaint as against them for lack of personal jurisdiction, should be modified, on the law, to deny the motion as to the first, second, fourth and sixth through eighth causes of action, and otherwise affirmed, without costs.

DeGrasse, J. (dissenting in part). This appeal is from an or-

---

**9.** Despite the dissent's assertion that the "complaint . . . call[s] for a determination in accordance with the procedural law of the Cayman Islands," choice of law provisions import only the foreign jurisdiction's substantive law, not its procedural rules (*Education Resources Inst., Inc. v Piazza*, 17 AD3d 513 [2d Dept 2005]; *see also Sears, Roebuck & Co. v Enco Assoc.*, 43 NY2d 389, 397 [1977]). Accordingly, the absence of a right to trial by jury in Brazil and the Cayman Islands is a significant consideration that weighs against dismissal for forum non conveniens.

der granting a motion to dismiss the complaint by the only remaining defendants, Opportunity Equity Partners, Ltd. (Opportunity Ltd.), Opportunity Invest II, Inc. (Opportunity Invest) and Daniel Valente Dantas (collectively, the Opportunity defendants). The Opportunity defendants moved below for dismissal on the grounds of lack of personal jurisdiction and forum non conveniens. I dissent because I disagree with the majority's conclusion that personal jurisdiction under CPLR 302 (a) (1) can be inferred from the complaint. Dismissal of the complaint was also warranted under CPLR 327.

Plaintiff, while employed by Citibank in the 1990s, devised a stratagem that enabled Citibank to make private equity investments in large Brazilian companies that were being privatized. At that time, the Office of the Comptroller of the Currency prohibited Citibank from managing any fund that would invest directly in Brazil. Therefore, plaintiff, acting with Dantas, a Brazilian citizen, created Opportunity Ltd., a Cayman Islands corporation. Opportunity Invest, a British Virgin Islands corporation, was the majority shareholder of Opportunity Ltd. Both entities are alleged to have been controlled and dominated by Dantas. The underlying Brazilian investment enterprise was carried out under three agreements that involved the Opportunity defendants and were executed on December 30, 1997: a shareholders' agreement, a limited partnership agreement and an operating agreement. Plaintiff, who owns shares of Opportunity Ltd., was a party to the shareholders' agreement but not the limited partnership agreement or the operating agreement.

The majority correctly cites *Licci v Lebanese Can. Bank, SAL* (20 NY3d 327, 334 [2012]) for the proposition that the issue of jurisdiction under CPLR 302 (a) (1) requires a determination of (1) whether the Opportunity defendants transacted business in New York and, if so, (2) whether plaintiff's causes of action arise from such transaction. The majority speaks of "a broader transaction of business in New York from which plaintiff's causes of action arise." Although the shareholders' agreement is related to other contracts with Citibank, the complaint makes it clear that plaintiff's causes of action arise out of the shareholders' agreement only. The following excerpt from the declaratory judgment cause of action, which mirrors the contract cause of action, is illustrative:

"116. Specifically, Plaintiff asks this Court to declare the following:

"a. Plaintiff and the Opportunity Defendants entered into the Shareholder Agreement, and this Agreement created a quasi-partnership relationship among them;

"b. The quasi-partnership created fiduciary duties owed to Plaintiff by the Opportunity Defendants, including but not limited to fair dealing, utmost good faith, loyalty, candor, and just and equitable treatment;

"c. These fiduciary duties include the duty to disclose material information to Plaintiff, including but not limited to the terms being negotiated, and agreed upon, in the Settlement Agreement;[1]

"d. These fiduciary duties, and the duty of just and equitable conduct, include the duty to make adequate disclosures, which duty was violated when the Opportunity Defendants negotiated a Settlement Agreement that barred Plaintiff from access to its terms, when the Opportunity Defendants secured distributions of the disinvestment profits solely to themselves and to the exclusion of Plaintiff, and when thereafter they refused to honor the obligation to pay Plaintiff the reasonable value of his interest in those profits, and when they failed to honor his demand to exercise his put option."

With respect to contracts, "[u]nder New York law, the transacts-business standard can be satisfied where both the negotiations and execution of a contract took place within New York" (*Grand Riv. Enters. Six Nations, Ltd. v Pryor*, 425 F3d 158, 166-167 [2d Cir 2005], citing *George Reiner & Co. v Schwartz*, 41 NY2d 648, 652-653 [1977]). In his opening brief, plaintiff cites an exhibit to the complaint in which it is stated that "the Shareholder Agreement was simultaneously executed in New York" by the Opportunity defendants and plaintiff. The mere execution of agreements in New York, however, does not constitute the transaction of business under CPLR 302 (a) (1) (*see Standard Wine & Liq. Co. v Bombay Spirits Co.*, 20 NY2d 13, 17 [1967]; *Abbate v Abbate*, 82 AD2d 368, 384 [2d Dept 1981]).

The complaint itself provides no basis for the majority's apparent inference that the agreement was negotiated here. Al-

---

**1.** The settlement agreement ended litigation among Citibank, Opportunity Ltd. and Dantas. Plaintiff was not a party to that lawsuit.

though paragraph 32 mentions negotiations between plaintiff and Dantas, it is not stated where the negotiations took place. Words with the root "negotiat" appear in the complaint 34 other times. Not one of these words, however, is used in reference to the shareholders' agreement or the other two agreements plaintiff invokes. It is also undisputed that plaintiff and Dantas both resided in Brazil during the four months preceding the execution of the agreements plaintiff invokes. In light of this fact, there is no reason to infer, as the majority does, that the agreements were negotiated in New York as opposed to Brazil. This is not a matter of what the majority describes as an inartfully drafted pleading. Rather, the complaint is simply devoid of jurisdictional facts that could have been alleged had they existed. The lack of discovery cited by the majority is of no moment. Plaintiff could have requested jurisdictional discovery pursuant to CPLR 3211 (d), but did not do so. I therefore assume that it was unnecessary.

The majority also posits that even if the shareholders' agreement had not been negotiated in New York, plaintiff's cause of action would arise from an "integrated whole" that includes the limited partnership agreement and the operating agreement. This broad transaction theory is at odds with the Second Circuit's determination that plaintiff's right to seek compensation stemmed solely from the shareholders' agreement and an alleged oral agreement with Dantas (*Wilson v Dantas*, 746 F3d 530, 537 [2d Cir 2014]). During colloquy before the district court, plaintiff's counsel conceded that his causes of action were based on nothing more than a put option set forth in the shareholders' agreement.

Grounds for dismissal of the complaint under the doctrine of forum non conveniens are even more compelling. Codified in CPLR 327 (a), the forum non conveniens doctrine permits a court to stay or dismiss an action where it is determined that the action would be better adjudicated in another forum (*Islamic Republic of Iran v Pahlavi*, 62 NY2d 474, 478-479 [1984], *cert denied* 469 US 1108 [1985]). Brazil, the place of residence of plaintiff and Dantas, where the underlying transactions took place, offers such a forum (*see e.g. Patriot Exploration, LLC v Thompson & Knight LLP*, 16 NY3d 762 [2011]). As stated above, Opportunity Ltd. and Opportunity Invest are foreign entities. Therefore, no party to this action is a New York resident or entity. Moreover, the resolution of this case will require the application of Cayman Islands law, as required by the

shareholders' agreement. In reliance on section 94 (d) of the Caymans Companies Law, a Cayman Islands statute, the complaint's declaratory judgment cause of action calls for relief "[i]n accordance with the procedure followed by the courts of the Cayman Islands, and the Privy Council."[2] The complaint here provides much more than "[b]road allegations that issues of [Cayman Islands] law will arise" (*compare Banco Ambrosiano v Artoc Bank & Trust*, 62 NY2d 65, 74 [1984] [cited by the majority]). "The applicability of foreign law is an important consideration in determining a forum non conveniens motion and weighs in favor of dismissal" (*Flame S.A. v Worldlink Intl. [Holding] Ltd.*, 107 AD3d 436, 438 [1st Dept 2013], *lv denied* 22 NY3d 855 [2013] [internal quotation marks omitted]). The majority erroneously adopts plaintiff's argument that litigation in Brazil or the Cayman Islands would cause hardship because there is no right to trial by jury in either of those jurisdictions. Although the majority is not reinstating the declaratory judgment cause of action, the complaint undermines plaintiff's hardship argument by calling for a determination in accordance with the procedural law of the Cayman Islands. *Neville v Anglo Am. Mgt. Corp.* (191 AD2d 240 [1st Dept 1993]) and *Gyenes v Zionist Org. of Am.* (169 AD2d 451 [1st Dept 1991]), which the majority cites, are distinguishable. Unlike the New York residents who brought those wrongful death and personal injury actions, plaintiff negotiated and executed an agreement that provided for the adjudication of his disputes "in accordance with the laws of the Cayman Islands." Contractual choice of law provisions are enforceable (*see Union Bancaire Privee v Nasser*, 300 AD2d 49, 50 [1st Dept 2002]). The third, fifth and ninth causes of action were correctly dismissed for reasons stated by the majority.

MAZZARELLI, J.P., and CLARK, J., concur with ACOSTA, J.; DE-GRASSE, J. dissents in part in a separate opinion.

Order, Supreme Court, New York County, entered August 27, 2013, modified, on the law, to deny the motion as to the first, second, fourth and sixth through eighth causes of action, and otherwise affirmed, without costs.

---

2. The English Privy Council functions as the Cayman Islands' highest appellate court (*International Equity Invs., Inc. v Opportunity Equity Partners, Ltd.*, 407 F Supp 2d 483, 498 [SD NY 2005], *affd* 246 Fed Appx 73 [2d Cir 2007]).