23-1281-cv
*Kafka v. Wells Fargo*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of October, two thousand twenty-four.

Present:

> GUIDO CALABRESI,
> WILLIAM J. NARDINI,
> *Circuit Judges*,
> PAUL A. ENGELMAYER,
> *District Judge*.[1]

---

JOSEPH A. KAFKA AND TODD KAFKA,

> *Plaintiffs-Appellants*,

v.                                                          23-1281-cv

WELLS FARGO SECURITIES, LLC,

> *Defendant-Appellee*.

---

| | |
|---|---|
| For Plaintiffs-Appellants: | Mark C. Rifkin, Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY, Kenneth Gilman, Gilman Law LLP, Bonita Springs, FL. |
| For Defendant-Appellee: | Lucia Nale, Mayer Brown LLP, Chicago, IL, Christopher J. Houpt, Benjamin D. Bright, Mayer Brown LLP, New York, NY. |

---

[1] Judge Paul A. Engelmayer, United States District Judge for the Southern District of New York, sitting by designation.

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Laura Taylor Swain, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Joseph and Todd Kafka appeal from a judgment entered by the United States District Court for the Southern District of New York (Laura Taylor Swain, *Chief Judge*) on September 15, 2023, dismissing their putative class action against Defendant-Appellant Wells Fargo Securities, LLC ("Wells Fargo"). The Kafkas seek to recover more than $500 million in losses incurred by investors in certain investment funds and limited partnerships managed, respectively, by LJM Investment Fund, L.P. and LJM Partners, Ltd. (together, "LJM"). They principally allege that in response to temporary market volatility on February 5, 2018, Wells Fargo—which, pursuant to "Futures and Cleared Swaps Agreements" ("FCM Agreements"), acted as a futures commission merchant to LJM—unlawfully forced LJM to liquidate its entire portfolio on February 6, 2018, causing the investors' losses. In the First Amended Complaint (the "FAC"), the Kafkas seek the certification of a class comprised of all individuals who, on February 5 and 6, 2018, held shares or partnership interests in the LJM portfolio. On behalf of that putative class, the Kafkas assert seventeen counts, including negligence, tortious interference with contract, aiding and abetting a breach of fiduciary duty, and breach of contract. Wells Fargo moved to dismiss the FAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted that motion, and the Kafkas now appeal. We assume the parties' familiarity with the case.

"We review *de novo* the dismissal of a complaint pursuant to Federal Rule of Civil

2

Procedure 12(b)(6), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020).[2] To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I. Negligence Claim[3]

First, the Kafkas argue that the district court erred in dismissing their negligence claim, which they characterize as a "gross negligence" claim.[4] As the district court noted, Illinois law recognizes gross negligence not as an independent cause of action, but instead as an enhanced form of negligence, so Illinois courts construe purported gross negligence claims under the ordinary negligence standard. App'x 122 (citing *Hamilton v. JPMorgan Chase & Co.*, No. 19-CV-5590, 2020 WL 4586109, at *3 (N.D. Ill. Aug. 10, 2020)); *see also Merit Ins. Co. v. Colao*, 603 F.2d 654, 659 (7th Cir. 1979) ("Illinois does not recognize gross negligence as an independent ground for recovery."). To prevail under a claim for ordinary negligence, a plaintiff must establish "that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury." *Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of*

---

[2] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

[3] The parties agree that: (1) Illinois law applies to the Kafkas' tort-based claims; (2) New York law applies to their contract-based claims, pursuant to the FCM Agreements' choice-of-law provision; and (3) New York law applies to their claims for aiding and abetting a breach of fiduciary duty because no conflict exists between Illinois and New York law. *See* App'x 121 n.7; Appellants' Br. 12 n.4; Appellee's Br. 11–12 n.1.

[4] The Kafkas do not address the dismissal of their negligent supervision claim on appeal. Accordingly, that claim is abandoned. *See United States v. Joyner*, 313 F.3d 40, 44 (2d Cir. 2002) ("[A]n argument not raised on appeal is deemed abandoned . . . . ").

*Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012). The Kafkas have not adequately alleged that Wells Fargo owed them, or any putative class members, any duty; this claim therefore fails.

The Kafkas' duty allegations are rooted in general negligence principles. Specifically, they allege that "[i]t was reasonably foreseeable that Plaintiffs, as investors in the Portfolio and owners of Portfolio Assets, would be injured by any unauthorized and adverse action taken with respect to the Portfolio," that is, "the immediate wrongful liquidation of the Portfolio," such that "Wells Fargo owed a duty of care to Plaintiffs." App'x 33 (FAC ¶¶ 116, 118). On appeal, they contend that under Illinois law, when "a course of action *creates* a foreseeable risk of injury, the individual engaged in that course of action has a duty to protect others from such injury." Appellants' Br. 20 (emphasis added in brief) (quoting *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012)). Thus, they contend, the duty of care here arises not from any contractual relationship between Wells Fargo and the Kafkas, but from "the foreseeability of injury" created by Wells Fargo's ordering LJM to liquidate its portfolio. *Id.* at 21.

But Wells Fargo owes no duty of care to the Kafkas and other putative class members under general negligence standards.[5] First, "there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons or tangible things." PROSSER AND KEETON ON THE LAW OF TORTS § 92 at 657 (5th ed. 1984). Here, the Kafkas allege purely economic harm. Additionally, Illinois law considers four factors

---

[5] The parties extensively debate whether the FCM Agreements govern Wells Fargo's duty of care to the Kafkas. Contracts can certainly *create* duties of care. "When negligence is based upon a contractual obligation, the scope of duty is determined by the terms of the contract." *Block v. Lohan Assocs., Inc.*, 645 N.E.2d 207, 221 (Ill. App. Ct. 1993); *see also Ferentchak v. Vill. of Frankfort*, 475 N.E.2d 822, 826 (Ill. 1985). But it is another thing to say that contracts can limit duties of care to non-contracting parties. After all, a contract binds only the contracting parties, and duties of care certainly exist outside of contractual duties. The Kafkas correctly contend that the narrow duty of care owed to LJM outlined in the FCM Agreements does not absolve Wells Fargo of other potential duties of care to non-contracting parties, including the Kafkas. Here, in the absence of a contract between the Kafkas and Wells Fargo, tort law defines Wells Fargo's duty to the Kafkas. *Klecan v. Countrywide Home Loans, Inc.*, 951 N.E.2d 1212, 1215–16 (Ill. App. Ct. 2011).

4

in assessing the duty of care: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant." *Doe-3*, 973 N.E.2d at 888. "The decision to impose a duty turns in part upon the probability or foreseeability that the defendant's negligent conduct will result in harm to the plaintiff, but also upon the desirability in terms of social policy for the extension of such a duty." *Bloomingdale State Bank v. Capitol Bank of Chicago*, 451 N.E.2d 599, 601–02 (Ill. App. Ct. 1983). If Wells Fargo had a duty to avoid financial harm to all downstream investors in its conduct, the scope of potential liability would be enormous and would severely restrict Wells Fargo's ability to protect its own financial wellbeing. The law would not impose such an immense burden.

For these reasons, the Kafkas fail to plead the existence of a duty owed by Wells Fargo to the putative class.

## II. Tortious Interference Claims

Second, the Kafkas argue that the district court erred in dismissing their claims for tortious interference with contract and tortious interference with business relations. To establish a claim for tortious interference with contract under Illinois law, a plaintiff must demonstrate (1) that there was a valid contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach caused by the defendant's wrongful conduct, and (5) damages. *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018). The Kafkas contend that the district court applied an incorrect legal standard by requiring them to allege that Wells Fargo "acted with specific animus, or otherwise singled out Plaintiffs or their contracts." Appellants' Br. 30–31. Instead, they submit, they can plead the requisite intent by alleging that the defendant acted "*either* to further his personal goals *or* to injure a party to the

5

contract." *Id.* at 30 (emphasis added in brief) (quoting *Webb*, 906 F.3d at 577). Thus, they contend, it was sufficient for them to allege that Wells Fargo acted to further its own goals. *Id.* at 31.

This argument is unavailing. Under Illinois law, intent "requires more than the knowledge that one's conduct is substantially certain to result in one party breaking its contract with another." *R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 826 F.2d 678, 687 (7th Cir. 1987), *modified on other grounds*, 924 F.2d 709 (7th Cir. 1991). The Kafkas must establish that Wells Fargo "desired that [LJM] breach its contract" with them, *id.* at 686, but they make no such allegation. They allege only that Wells Fargo "acted on its own behalf, in furtherance of its own interests." App'x 20 (FAC ¶ 62). Accordingly, they have failed to plead tortious interference with contract.

The Kafkas' claim for tortious interference with business relations also fails.[6] To state such a claim, a plaintiff must allege (1) a reasonable expectation of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from developing into a valid business relationship, and (4) damages resulting from the interference. *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009). As the district court noted below, the Kafkas do not specifically allege interference with a *prospective* business relationship; rather, they allege that Wells Fargo interfered with an *existing* contractual relationship between them and LJM. Indeed, in the FAC section concerning this claim, the Kafkas allege that Wells Fargo interfered with their "valid executory and enforceable business relationships" with LJM—in other words, the same FCM Agreements at issue in the tortious interference with contract claim. App'x 41 (FAC ¶¶ 164–69). Thus, this claim is merely duplicative of the tortious interference with contract claim, and the

---

[6] Under Illinois law, "the terms tortious interference with prospective economic advantage, business expectancy, and business relations are interchangeable." *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 807 n.30 (N.D. Ill. 2011).

district court properly dismissed it on that basis. *See, e.g.*, *Jam. Citizens Bank, Ltd. v. N. Am. Special Risk Assocs., Inc.*, No. 96-CV-4203, 1996 WL 648712, at *5 (N.D. Ill. Nov. 1, 1996) (dismissing tortious interference with business relations claim as duplicative when allegations concerned interference with existing contract).

### III.     Aiding and Abetting a Breach of Fiduciary Duty Claim

Third, the Kafkas argue that the district court improperly dismissed their claim for aiding and abetting a breach of fiduciary duty.  To state such a claim under New York law, a plaintiff must adequately allege "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006).  The Kafkas have not adequately alleged that LJM breached a fiduciary duty; accordingly, their aiding and abetting claim against Wells Fargo necessarily fails.

The FAC offers only the conclusory allegation that by liquidating the portfolio in response to Wells Fargo's coercion, LJM breached the fiduciary duties it owed to putative class members. The fact that LJM acceded to Wells Fargo's demand to liquidate the portfolio, without more, is not sufficient to raise an inference that LJM breached a fiduciary duty.  Indeed, because the Kafkas fail to allege that LJM acted in bad faith or with fraudulent intent, the "business judgment rule" insulates LJM's liquidation decision from this Court's scrutiny. *See In re Kenneth Cole Prods., Inc.*, 52 N.E.3d 214, 218 (N.Y. 2016) (pursuant to the business judgment rule, "absent fraud or bad faith," courts will defer to the business determinations of corporate officers and directors that "certain actions will promote the corporation's interests").  The Kafkas argue that the business judgment rule does not apply here because "LJM vigorously opposed liquidating the Portfolio, and it exercised no business judgment when it did so."  Appellants' Reply Br. 4.  But they cannot

circumvent the rule by merely recharacterizing a business judgment with which they disagree as no business judgment at all. And although the Kafkas repeatedly allege that Wells Fargo acted in bad faith and with intent to defraud, they make no such allegations—let alone well-pleaded allegations—against LJM, and thus have not overcome the presumption that the business judgment rule shields LJM's decision from our review. Accordingly, the Kafkas have failed to plead a breach of fiduciary duty by LJM. That failure, in turn, precludes their aiding and abetting claim against Wells Fargo. *See, e.g.*, *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011) (dismissing aiding and abetting claim on the ground that the plaintiff failed to plead an underlying breach of fiduciary duty).

### IV. Contract-Based Claims

Finally, the Kafkas assert that the district court improperly dismissed their claims for breach of contract as third-party beneficiaries and for breach of the implied covenant of good faith and fair dealing. First, they contend that the FCM Agreements' disclaimer that there are no third-party beneficiaries to the agreement "does *not* control the Kafkas' third-party beneficiary status." Appellants' Br. 41. They contend that "New York courts look past the language of the contract." *Id.* But as the district court noted, the cases that they cite in support of that proposition "did not involve contracts that expressly disclaimed third-party beneficiaries." App'x 130. When a contract includes such an express disclaimer, a court must enforce the language of the contract. *See Wilson v. Dantas*, 746 F.3d 530, 537 (2d Cir. 2014) ("[C]ourts within this Circuit have consistently held that even where a contract expressly sets forth obligations to specific individuals or categories of individuals, those individuals do not have standing to enforce those obligations by suing as third-party beneficiaries when the contract contains a negating clause."); *India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) ("[W]here a provision exists in an agreement expressly

8

negating an intent to permit enforcement by third parties, that provision is decisive."). The FCM Agreements provide that "[t]here shall be no third-party beneficiaries" and contain an integration clause providing that "[t]his Agreement contains the entire agreement between the parties." App'x 78, 81 (FCM Agreements §§ 26, 33). These provisions leave no doubt that the parties intended to preclude any benefit from flowing to a third party. *See Edge Mgmt. Consulting, Inc. v. Blank*, 807 N.Y.S.2d 353, 368–69 (1st Dep't 2006) ("In determining whether a third party was an intended beneficiary to a contract, the actual intent of the parties is critical. The best evidence of the contracting parties' intent is the language of the agreement itself."). Accordingly, the district court properly dismissed the Kafkas' third-party beneficiary claim. *See, e.g.*, *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) ("[D]ismissal of a third-party-beneficiary claim is appropriate where the contract rules out any intent to benefit the claimant . . . .").

The Kafkas also contend that they stated a claim for breach of the implied covenant of good faith and fair dealing as a third-party beneficiary. Under New York law, "[i]f there is no contract with [a defendant], there can be no implied covenant claim against it." *Allenby, LLC v. Credit Suisse, AG*, 25 N.Y.S.3d 1, 4 (1st Dep't 2015). Because the Kafkas have no direct contractual relationship with Wells Fargo and are not intended third-party beneficiaries to the FCM Agreements, their claim for breach of the implied covenant fails.

\* \* \*

We have considered the Kafkas' remaining arguments and find them to be unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

9